# CHARLESTON.

MARJORY CUMMINGS *v.* THE MASONIC PROTECTIVE ASSOCIATION.

Submitted October 5, 1920.   Decided October 12,.1920.

1. INSURANCE—*Notice of Delinquency Held Not a Demand for Payment or Waiver of Forfeiture.*

A notice by a clerk of a beneficial association to a delinquent member, calling attention to his delinquency and expressing the hope that he will give the matter his attention, does not amount to demand of payment nor to an unconditional waiver of the forfeiture.    (p. 201).

2. SAME—*Remittance Not Accepted Does Not Reinstate Delinquent or Waive Forfeiture.*

If upon receipt of such a notice, the delinquent member, after forfeiture, remits the amount of such delinquency, and with his remittance gives notice of his bad condition of health, and the insurer promptly declines the offer, such remittance does not reinstate the delinquent nor bind the insurer to an unconditional waiver of the forfeiture.    (p. 201).

3. SAME—*Method Prescribed by Policy for Reinstatement Must be Followed.*

Where an insurance policy provides a particular mode of application for reinstatement subject to the approval of the board of directors, that method must be pursued, in the absence of a definite practice or of specific authority given an agent to waive the forfeiture.    (p. 201).

87 W. Va.

4. SAME—*Notice of Delinquency Held Not a Demand for Payment or Waiver of Forfeiture.*

Where in such case the insurer has by the terms of the policy an election whether it will reinstate a delinquent member after forfeiture, it can not be regarded as having waived the forfeiture by giving notice to the delinquent of his delinquency, if ignorant of the bad condition of his health occurring after the forfeiture. (p. 203).

(WILLIAMS, PRESIDENT, absent.)

Error to Circuit Court, McDowell County.

Action in justice court by Marjory Cummings, administratrix, etc., and others, against the Masonic Protective Association. From a circuit court judgment for plaintiffs, on defendant's appeal from the judgment of a justice court, defendant brings error.

*Reversed, and judgment for defendant.*

*Litz & Harman,* for plaintiff in error.
*Anderson, Strother, Hughes & Curd,* for defendant in error.

MILLER, JUDGE:

Upon an appeal by defendant from the judgment of a justice of McDowell County the plaintiffs, in the circuit court, obtained a judgment against defendant for $214.50 with interest and costs, to which judgment we awarded the defendant the present writ of error.

The action was to recover the amount of disability or sick benefits alleged to have accrued to the insured from June 15, 1918 to October 24, 1918, a period of twenty weeks, at the rate of $5.00 for the first week and $10.00 for each week thereafter as provided in a policy or certificate of insurance issued to J. A. Cummings, now deceased, on August 3, 1912.

There is no controversy about the facts, which were submitted to the court in lieu of a jury, with the result already indicated. It is conceded that according to its terms the insured forfeited the policy for non-payment of the quarterly premium due June 1, 1918, and that unless the defendant thereafter, in some way, waived the forfeiture plaintiffs would not be entitled to recover the amount sued for or any part thereof. The plaintiffs claim,

and the circuit court decided that the defendant did waive the forfeiture, by letter of July 10, 1918, addressed to the insured and signed by Lemuel J. Hodkins, Secretary, and by the custom of sending similar letters to others, as follows:

"We have just received a report from our collector and notice that you had not paid your premium up to the time he mailed his remittance.

"We furnish accident and health insurance at a very moderate cost, and strive to make our service satisfactory to members, for we want not merely their premiums, but their good will.

"We hope the situation is that you have merely overlooked paying your premium, and will forward us a check or money order for the amount or hand the same to the collector. If, however, we have failed in any way to give you satisfactory service we wish you would advise us.

"We enclose an addressed envelope and shall be glad to hear from you."

It is claimed that this letter amounted to demand of payment of the premium by the secretary, after notice of the forfeiture, and that the payment being sent by the insured pursuant to the demand, the defendant was bound thereby as a waiver, and liable to the plaintiff. In response to the letter of the secretary, described by the officers of the association as the "Follow up Letter", the insured wrote:

"I have for acknowledgment your letter of the 10th relative to my failure to pay my insurance premium.

"I have been sick for the past month and have failed to send my check covering my insurance. The doctors have ordered me in bed for three months, and I am not working at present time nor will I return until I have fully recovered. The doctors have pronounced my case a swollen Thyroid gland, and this has caused me to lose 28 pounds and I am very nervous at all times.

"Kindly advise if I am entitled to compensation for this trouble."

Promptly on receipt of this letter the association, through Charles A. Harrington, General Manager, replied as follows:

"We acknowledge your letter inclosing remittance to apply on your overdue June 1st premium.

"As we cannot recognize the disabilty from which you advise you have been suffering for a month past, on account of its having commenced while your policy was not in force, we return your check herewith.

"If you desire to apply for reinstatement of your policy when you have fully recovered we shall be glad to hear from you in this regard."

Upon this documentary evidence and the testimony of the clerks that it was a custom of the association to send out to delinquents "follow up letters" like the one already quoted, the court found for plaintiffs and gave judgment in their favor.

As evidencing the authority of the secretary to waive forfeiture of the policy claimed, we are referred to a provision as follows: "No person, except the President, Secretary, or Manager, shall alter or waive any provision or condition of this Policy, issue permits, or make contracts of any kind." Reading this provision in connection with another provision of the policy specifically providing how reinstatement may be made, we do not think it was within the power of the secretary to waive a forfeiture, certainly not without knowledge of all the facts affecting the health of the insured. The provision for reinstatement is as follows: "Failure to pay a premium upon the appointed days shall terminate this contract except as to such claim as has then accrued. In case of such failure to pay a premium the insured may apply at the Home Office at Worcester, Mass., for reinstatement, subject to the approval of the Directors."

It is quite true effect must be given to the other provisions of the policy denying to any except the officers named the right to alter or waive any provision of the conditions of the policy, issue permits, or make contracts of any kind. But must not this provision be confined rather to the inception of the contract, to the altering or waiving of some of its provisions or conditions, and awarding permits, etc? Unless we treat the contract in this way, the provision relating to reinstatement would be practically nugatory and useless. The clause relied on by plaintiff contains no specific authority to waive payment of premiums, or relieve from forfeiture; and in so serious a matter as waiving forfeitures, when the insured might be sick or perchance *in extremis,*

should not the insurer be entitled to a knowledge of the facts before being regarded as having waived the forfeiture? The insured, after forfeiture, if suddenly becoming sick or about to die, would gladly take advantage of any invitation to pay and by paying the premiums in arrears reinstate himself and impose on the insurer the liability that would follow such action. In the case at bar the general manager, upon receipt of the remittance and notice of the physical condition of the insured, promptly returned it and declined the offer; and the insured never thereafter took advantage of the provision to apply for reinstatement, and was in fact never reinstated. Generally where one is required to make an election, he is entitled to know the facts and circumstances, and the nature of his own rights, and at least in equity he will be permitted to revoke, unless the rights of third persons intervene. *Tolly* v. *Poleet,* 62 W. Va. 231. In 2 Bacon on Benefit Societies, sec. 423, quoting from the New York Court of Appeals, it is said: "Ordinarily a party should not be held to have waived a forfeiture, in the absence of facts constituting an estoppel, unless he intended to waive it, nor can he be held to have waived it unless he knew of the facts constituting the forfeiture." The evidence of the clerk in mailing "follow up letters", tending to show a custom to send out such letters to delinquents and to accept overdue payments from members in good health, could not amount to a change in the terms of the contract, or work an estoppel. There was no effort to prove a general custom of accepting premiums from persons not in good health, or that the insured relied on such custom in omitting to pay his premiums as required by the plain terms of the contract, without which we do not think it can be said that defendant waived payment, as stipulated. 2 Bacon on Benefit Societies, sec. 431a. In the case of *Koehler* v. *Modern Brotherhood of America,* (Mich.), 136 A. S. R. 424, it is held that acceptance by the society of delinquent dues from a suspended member, not entitled to reinstatement, in ignorance of the condition of the insured, does not amount to a waiver of the forfeiture; and it has been decided frequently that the sending out of notices to delinquents and inviting reinstatement if in good health, done not because required by the policy but as a favor to the insured,

will not be regarded as an invitation to pay up and be reinstated regardless of the condition of the health of the insured, nor do we think the notices or "follow up letters", such as it was the custom of defendant to send to delinquents, though not specifically conditioned on continuing good health, amounted to invitations to such delinquents to be reinstated unconditionally.    The presumption, we think, would be that the invitation was extended to those only who might be in good health.

The policy sued on *ex vi termini* became forfeited without further action of the insured, not merely suspended. It required no affirmative action of the insurer, and the policy provides the method of reinstatement, which amounts to making a new contract. *Mutual Fire Ins. Co.* v. *Mapel,* (Ore.), 38 L. R. A. (N. S.) 726; *Kennedy* v. *The Grand Fraternity,* 25 L. R. A. (N. S.) 78, and note. In Virginia it was recently decided that request for payment of a past due premium note did not constitute a waiver of the condition in the note as well as the policy, providing that in event of failure to pay the note there would be no further extension of the payment, and the policy should then cease and determine and be treated in all respects as if the conditional note had not been given. *Mercer* v. *South Atl. Life Ins. Co.,* 111 Va. 699.

The court below in a written opinion relied mainly on the case of *Murray* v. *Home Benefit Life Association,* (Cal.), 27 Pac. 309. In that case the insurance company not only notified the insured of past due payments but about the same time notified him of premiums to become due at a future date, apparently treating the policy as then in force. We are not prepared to follow that case, if it was intended thereby to hold that the mere sending of the notice of past due premiums to the insured amounted to a waiver of the forfeiture. The cases cited by the court in that case, we do not think justify the conclusion drawn therefrom.    Those cases are:    *Viele* v. *Germania Ins. Co.,* 26 Iowa 9, a fire insurance case; *Insurance Company* v. *Young,* 86 Ala, 424; *Titus* v. *Insurance Co.,* 81 N. Y. 410; *Knickerbocker Ins. Co.* v. *Norton,* 96 U. S. 234. It will be found by examining these cases that if after knowledge of the default the insurer enters into negotiations with

the insured which recognize and treat the policy as in force, the forfeiture will be treated as waived. In the Knickerbocker case the question was whether the insurance company had not by a course of dealing recognized the authority of its agent to extend the time of payment of premiums, a fact which under the evidence in that case was regarded as one for the jury, and that this question was properly submitted on the evidence and instructions. In the case we have here the only evidence tending to show waiver is the fact that notice of default in payment was mailed to the insured in regular course. Can these facts be treated as evidence of waiver? Rather was it not simply to give the insured notice of his default and to give him opportunity to make application for reinstatement as provided by the policy? The insured was not thereby led to believe that his policy was still in force. His policy gave him notice how he might reinstate it.

It is with some regret that we feel called upon to reverse the judgment and enter judgment here for defendant.

*Reversed and judgment for defendant.*