# Richmond.

## MERCER v. SOUTH ATLANTIC LIFE INSURANCE COMPANY.

### January 12, 1911.

### Absent, Cardwell, J.

1. LIFE INSURANCE—*Date of Commencement of Policy—Agreement of Parties.*—The contract of parties is the law of the case, unless it be repugnant to some rule of law, or some principle of public policy, hence a life insurance policy cannot be held to run from the date of its delivery where the parties have agreed that it shall run from the date of the policy.

2. LIFE INSURANCE—*Failure to Pay Premium—Forfeiture—Notice of Non-Payment After Forfeiture.*—Where a life insurance policy provides for the reinstatement of an insured upon presentation of satisfactory evidence of insurability, and upon certain other conditions, the fact that the cashier of the company wrote to an assured, after the maturity of a note given for a premium that the note was past due, and requested him to give the matter prompt attention, does not constitute a waiver of the condition in the note as well as in the policy providing that in the event of failure to pay the note there would be no further extension, and said policy should then cease and determine and be treated in all respects as if the conditional note had not been given.

3. LIFE INSURANCE—*Prompt Payment of Premiums—Right to Enforce Forfeitures.*—Promptness of payment is essential in the business of life insurance. All the calculations of the insurance company are based on the hypothesis of prompt payments. They not only calculate on the receipt of the payments when due, but on compounding interest upon them. It is on this basis that they are enabled to offer insurance at the favorable rates they do. Forfeiture for non-payment is a necessary means of protecting themselves from embarrassment. Delinquency cannot be tolerated or redeemed except at the option of the company.

4. LIFE INSURANCE—*Failure to Pay Premiums—Waiver by Agents—Varying Terms of Contract—Parol Evidence.*—In an action to

recover on a life insurance policy, a contemporaneous parol agreement or undertaking between the agent of an insurance company who solicits the insurance and the assured as to the time and place of paying the premiums, different from that stated in the policy, cannot be given in evidence, as it varies or contradicts the terms of the written contract of the parties. An insured should look at his policy, and conform to it, and limitations of the agent's authority should be effective, unless the insurance company, by a course of business, or otherwise, has waived the limitation on the agent's power of waiver. An agent to collect premiums has no authority to extend the time of payment of an over-due premium, and, where the policy declares a forfeiture for failure to pay at maturity, and forbids waiver by agents, their agreements to extend the time of payments do not, as a rule, bind the company.

Error to a judgment of the Law and Equity Court of the city of Richmond in a proceeding by motion for a judgment. Judgment for the defendant. Plaintiff assigns errors.

*Affirmed.*

The opinion states the case.

*John A. Lamb* and *David Meade White*, for the plaintiff in error.

*E. Randolph Williams*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

Etta Mercer, who was the beneficiary in a policy of insurance issued by the South Atlantic Life Insurance Company to her husband, Hugh C. Mercer, since deceased, brought suit in the Law and Equity Court of the City of Richmond, and after the evidence was placed before the jury the defendant demurred. The jury rendered a verdict in favor of the plaintiff for $1,000. The court entered judgment for the defendant upon the demurrer to the evidence; and the plaintiff obtained a writ of error.

The evidence tends to prove the following facts: Mercer,

the insured, was born on the 17th day of January, 1876. On the 16th day of July, 1906, he made application for a $1,000 policy upon his life. Upon being examined by the physician for the company it appeared that his case was one known to insurance companies as a "border line case," that is, a case where the applicant for insurance does not disclose a perfect physical risk. His application was referred to the board of review, and as a result the policy was issued on the 31st day of December, 1906, payable in the event of his death to his wife, Etta Mercer. The policy was delivered to Warren Mercer, the agent of the company, who was a brother of the insured, and was by him delivered to the insured on the 28th of January, 1907. The policy, however, bears date the 16th day of July, 1906. The policy sued on is what is known as a policy by the year—that is, with one annual payment of the premium, as distinguished from quarterly or semi-annual payments—and it contains a clause known in insurance parlance as a "grace clause," in the following words: "A grace of one month, during which time the policy remains in full force, will be allowed in payment of all premiums except the first, subject to legal interest for the days past due."

As we have said, the insured was born on the 17th day of January, 1876. He made application for the policy on the 16th day of July, 1906, and the policy was dated on the day of the application, and the 16th day of July in each year thereafter was fixed as the due date of the premiums. The twenty-year accumulation period of the policy was by its terms to end on the 16th day of July, 1926, at which time, if living and all the premiums had been duly paid as provided, the company would apportion to this contract its share of the surplus earnings, or the insured would be given one of a number of options stated in the policy; or if the insured died within one year from the date of the policy or subsequently, if the contract should be extended and kept in force

according to its terms, the amount of the insurance became immediately payable upon receipt and approval of the proofs of death.

By dating the policy as of the 16th of July, the date of the application, the insured secured a reduced premium and accelerated the termination of the twenty years accumulation period. Had the date of the policy been postponed until the 17th of July, his nearest birthday would have been the 16th of January, 1907, whereas, counting from the 16th of July, his nearest birthday was on the 16th of January, 1906.

These facts are referred to as giving a reason for the contract into which the insured entered. By that contract he took a policy which bears date the 16th of July, 1906, which upon payment of the first year's premium became binding upon the company until the 16th day of July, 1907.

The contracts which men make constitute the law which governs them, unless the contract be one which the law prohibits, or which is held to be violative of some public policy.

On the 16th day of July, 1907, when the second premium became due, it was not paid, but on the 16th day of August of that year, the limit of the thirty-day period of grace, granted by the terms of the policy, the insured gave his note, due September 16, 1907, for $32.25 on account of the second year's premium. When the note became due, the insured paid $8.00 in cash on account of this note and gave his note for $24.41, the balance due, payable December 15, 1907. On December 14, 1907, the insured renewed this obligation with a further note dated December 14, 1907, for $24.77, payable with interest January 2, 1908. This note is in the same form as the previous notes, and is as follows:

"24.77 and 6c. int.                          December 14, 1907.

"On or before January 2, 1908, after date, without grace, for value received, I promise to pay to the order of the South Atlantic Life Insurance Co., Richmond, Va., twenty-four and 83-100 dollars, at their office in Richmond, Va., the same to-

gether with the cash named below, being the premium and interest (less dividends, if any), under Policy No. 4637, in said company.

"It is understood and agreed that this note, with the partial cash payment of $8.00, shall not bind said company to any renewal or extension of the insurance under said policy until this note is approved at the home office by form 53, signed by an officer of the company, and it is also agreed that, after such approval, if this note is not paid when due, there will be no further extension, and said policy shall then cease and determine and shall be treated in all respects as if this conditional note and cash payment had not been made.                    (Signed) H. C. MERCER."

On December 30, 1907, the insurance company, through its cashier, notified the insured by letter that his note would be due and payable at the office of the company on January 2, 1908. The note was not paid on that date, nor was the letter of the company in any way acknowledged by the insured. On January 13, 1908, and again on January 21st, the cashier called the insured's attention to the fact that the note was then in default and requested him to give the matter his prompt attention. None of these letters were acknowledged by the insured. He was taken ill at four o'clock in the morning on the 16th day of February, and at six o'clock his wife informed her father that this premium was due. The father-in-law of the insured, at his daughter's request, went on the 18th of February to the office of the insurance company and tendered a check for the past due note. He was advised that the check would not be received without a certificate of good health of the insured. This not being produced, the check so tendered was refused. Three days afterwards the insured died, and the insurance company refused payment of the policy, on the ground that the second premium not having been paid the policy was not in force at the death of the insured.

The contentions of appellant are, (1) that while the contract of insurance was dated the 16th day of July, 1906, yet, as it was not actually issued until the 21st day of December, nor perhaps delivered by the agent of the company until some day in January, 1907, the policy must be considered as running from the day of issue or day of delivery, and not, as provided by agreement of the parties from the date of the contract, although the contract provides only for insurance for one year from the 16th of July; and (2) that the act of the cashier in writing to the insured advising him of the default in payment of his note was a waiver of the condition in the note as well as in the policy providing that in the event of failure to pay the note there would be no further extension and said policy should then cease and determine and be treated in all respects as if the conditional note had not been issued.

As we have said, the contract of the parties is the law of the case, unless it be repugnant to some rule of law or some principle of public policy.

The policy provides, that "If any premium, or any part of a premium hereon, or any cheque, note or other obligation given in settlement of any premium, or any part of a premium hereon, be not paid when due, this contract and all rights based thereon, without action on the part of the company, shall immediately terminate, except as to the right to paid up or continued insurance as provided on the second page hereof."

The letters written by the agent of the company to the insured, calling his attention to the date his note of December 14th would become due, advised him fully of the situation. One of these letters was dated December 30, 1907, another January 13, 1908, and a third January 21, 1908, all of which requested prompt attention at his hands. The note of December 14th expressly provided that if it was not paid when due there would be no further extension, "and said policy shall

then cease and determine and shall be treated in all respects as if this conditional note and cash payment had not been made." The right of the insured therefore, was at an end on January 2d, and the only right that remained in him was that of reinstatement.

The policy provides, that "This contract may be reinstated at any time during the accumulation period, upon written application to the home office, with evidence of insurability satisfactory to the company, and payment, with interest, of all past due premiums, and interest due and unpaid on any loan outstanding, except within the last two years of the accumulation period if the payment of premiums had been discontinued for three years or more."

Instead of heeding these warnings, no attention whatever was paid to them. When the insured became fatally ill, and had been removed to a hospital, where he died, a check for the past due note was tendered to the company, which it refused unless accompanied by a certificate of good health of the insured, which of course was impossible.

"Promptness of payment is essential in the business of life insurance. All the calculations of the insurance company are based on the hypothesis of prompt payments. They not only calculate on the receipt of premiums when due, but on compounding interest upon them. It is on this basis that they are enabled to offer insurance at the favorable rates they do. Forfeiture for non-payment is a necessary means of protecting themselves from embarrassment. Delinquency cannot be tolerated or redeemed except at the option of the company." *Klein* v. *Insurance Company*, 104 U. S. 88, 26 L. Ed. 662.

As was said by this court in *Metropolitan Life Ins. Co.* v. *Hall*, 104 Va. 572, 52 S. E. 345, "In an action to recover on a life insurance policy, a contemporaneous parol agreement or understanding between the agent of an insurance company who

solicits the insurance and the insured as to the time and place of paying the premiums, different from that stated in the policy, cannot be given in evidence, as it varies or contradicts the terms of the written contract of the parties. An insured should look at his policy and conform to it, and limitations of the agent's authority should be effective, unless the insurance company, by a course of business or otherwise, has waived the limitation on the agent's power of waiver. An agent to collect premiums has no authority to extend the time of payment of an overdue premium, and, where the policy declares a forfeiture for failure to pay at maturity, and forbids waiver by agents, their agreements to extend time of payment do not, as a rule, bind the company."

Here the case is stronger than that just cited, for the insured was permitted to avail himself of the extension of time provided for in the note given by him for the deferred premium. The insurance company was strictly within its rights to refuse the check which was tendered in behalf of the insured, who was at that time fatally ill. We cannot hold, as claimed by appellant that the policy is to be considered as having taken effect at the date of its delivery, because that would be in direct contradiction of the policy itself, which declares that it is to be effectual upon payment of the initial premium for one year from its date on July 16, 1906; and we cannot hold that there was a waiver, because the utmost limit of the extension given by the company to the insured was reached on January 2, 1908, at which time we are of opinion all his rights under the policy ceased and determined, as provided not only by the policy itself but by the very terms of the note which he had given for the deferred premium.

The judgment of the law and equity court is affirmed.

*Affirmed.*