# Richmond.

## Pacific Mutual Life Insurance Company v. S. James Turlington, administrator.

### December 18, 1924.

1. Life Insurance—*Default in Payment of Premium—Application by Company of Amount due Insured to Payment of Premium—Case at Bar.*— Where anything is due to the insured and he is in default, it is the company's duty to apply the amount so due upon the premium in default, and since it is the company's duty to do so, the courts will treat it as having been done and will not permit the policy to lapse so long as the amount which may be due is sufficient to carry it. While this is the general law it has no application to the instant case because from the express provisions of the policy it had no cash value at the time of the default and no automatic extension attached until three annual premiums had been paid, which had not been done.

2. Life Insurance—*Cash Value—Loan Value.*—There is nothing that inheres in the nature of a life insurance policy that gives it either a loan or cash value and it has none unless the contract so provides or some valid statute so declares.

3. Insurance—*Construction Against Insurer.*—Doubtful expressions incorporated into contracts of insurance are to be construed strictly against the insurer.

4. Life Insurance—*Default in Payment of Premium—Application of Company of Amount Due Insured—Case at Bar.*—While in the instant case plaintiff admitted that the third year's payment had not been paid, he claimed that since had it been paid he would have been entitled to a loan in excess of the sum so paid, the court must hold that the company had to his credit that amount and was obliged to apply it upon his overdue premium. But this would violate the plain letter of the contract. From its express provisions it appears that no present cash value and no automatic extension attached as incident thereto until three annual premiums had been paid and until three full years had passed. This is the contract as written. Entered into by competent parties, not unlawful in itself, not contrary to public policy and in violation of no statute. It is not within the province of courts to whittle away by nice distinctions the patent meaning of plain English.

5. Penalties and Forfeitures—*Life Insurance—Provision for Termination on Default.*—During the first three years following the execution of a life insurance policy the company agreed to keep the policy alive so long as the premiums were paid. When the premiums were not paid the contract was to end. There is no question of forfeiture under such a contract. One might as well speak of forfeiting a fire insurance policy at the end of the term for which it was written.

6. Life Insurance—*Forfeiture for Nonpayment of Premiums.*—Promptness of payment is essential in the business of life insurance. All the calculations of the insurance company are based on the hypothesis of prompt payments. They not only calculate on the receipt of premiums when due, but on compounding interest upon them. It is on this basis that they are enabled to offer insurance at the favorable rates they do. Forfeiture for nonpayment is a necessary means of protecting themselves from embarrassment. Delinquency cannot be tolerated except at the option of the company.

Error to a judgment of the Circuit Court of Accomac county, in an action on a life insurance policy. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Roy D. White, H. Ames Drummond* and *Wm. L. Marbury,* for the plaintiff in error.

*James E. Heath,* for the defendant in error.

Holt, J., delivered the opinion of the court.

For convenience the plaintiff below will be called the plaintiff here and the defendant below the defendant here.

This action was brought by S. James Turlington, administrator of Charles Devries Phillips, to recover on a certain life insurance policy dated October 1, 1918, wherein the Pacific Mutual Life Insurance Company of California agreed to pay, upon proof of the death of the

insured, the sum of $2,000.00. The beneficiaries in it when issued were the insured's wife, Carrie M. Phillips, and his two children, Garland D. and Catherine F. Phillips. Afterwards, in due course, the wife was made the sole beneficiary with provision that should she die before the insured the policy should be for the benefit of his estate. She did predecease him and so this action is properly brought in the name of his administrator, he having died intestate. There was judgment for the plaintiff for the amount sued for. This policy was issued through the Florida branch of the defendant company and provides on its face in part as follows:

"In consideration of the application for this policy, a copy of which is attached hereto and made a part hereof, and of the payment in advance of the quarter-annual premium of eighteen and 00/100 dollars, and of the payment of a like premium on the first day of January, April, July and October in each year during the continuance of this policy until the death of the insured;

"Promises to pay, at the home office of the company in the city of Los Angeles, on receipt at said home office of due proof of the death of Charles Devries Phillips, here called the insured, two thousand dollars, less any indebtedness hereon to the company and any unpaid portion of the premium for the then current policy year, to Carrie M. Phillips, wife of the insured, Garland D. Phillips and Catherine F. Phillips, children of the insured, equally, or to the survivors or survivor."

The insured returned to Virginia in December, 1919, and went to the home of his mother-in-law, Mrs. Clare Hornsby, at Quinby, in said county. There he continued to live until late in September or early in October of 1920, at which time he was arrested and held to serve an unexpired term in the county jail for violation of the prohibition law. He was sent to the county road force,

but was brought back to Accomac jail because of his
mental condition.   He was adjudged a lunatic and
taken to the State Hospital at Williamsburg on the Fri-
day preceding his death, which occurred on the 13th of
March, 1921.   From the date of the policy to October
1, 1920, he paid his premiums promptly.   The premium
of October 1st was paid, but it was the last payment
made.   Notice that a quarterly premium would be due
on January 1, 1921, was duly sent and when payment
was not received a tracer was sent out and thereafter a
letter calling attention to the overdue premium; and
after the grace period provided for in the policy had ex-
pired, he was invited by letter to apply for reinstate-
ment.   To none of these did he respond.   All of them
were addressed to Quinby, Virginia, his last known ad-
dress.   Some must have reached him in the prison
where he was held for Mr. Turlington testifies in chief:

"I would like to state that I know that Mr. Phillips
received correspondence from this company while he
was incarcerated in jail and all that correspondence was
turned over to me, and I know that on one occasion he
got a notice of the premium that was due from that com-
pany because it was handed to me."

About these facts there is no dispute at all.   It is
conceded that the last payment made was on October
1st; that the payment due on January 1st was never
paid, and that the insured died after the expiration of the
days of grace and on March 13th.   The consideration
for the policy was the continued payment of the pre-
miums promised and these were not paid.   Certainly
the one due January 1st was not made, but it is said that
it is not necessary that it should be.   The plaintiff's po-
sition stated in his brief is:

"That is to say, the said Charles Devries Phillips had
the right on October 1, 1920, to pay to the plaintiff in

error $72.00, and then immediately to have the plaintiff in error turn back to him, upon the sole security of his policy, the cash surrender value available at the end of the third year of the life of the policy, after deducting from the said sum a year's interest thereon. Phillips did not pay to the plaintiff in error on October 1, 1920, the full year's premium, but, as stated, made only his regular quarterly payment of $18.00. It would, therefore, have been necessary for him to pay $54.00 more in order to obtain the loan mentioned. The amount of this loan was $84.00. (See table on page 38 of the printed record.) So that if Phillips had at any time after October 1, 1920, paid the additional $54.00 to the plaintiff in error, he would have been entitled to get back from the plaintiff in error $84.00 less six per cent interest thereon. This interest would have amounted to $5.04, so that he would have been entitled to get back the net sum of $78.96. In other words, on October 1, 1920, and thereafter until his death, the plaintiff in error had in its hands belonging to Phillips the difference between $78.96 and $54.00, or $24.96."

In support of this is cited 14 R. C. L. 966.

"Subject to the exceptions hereinafter noted, the rule may be laid down broadly that an insurance company has no right to declare a policy of insurance forfeited for the nonpayment of a premium, assessment, or dues, when at the time the company is in any way indebted to the policyholder, either for dividends declared or other funds which it may have in its hands belonging to the insured."

To the same effect see *Girard L. Ins. Annuity & T. Co.* v. *Mutual L. Ins. Co.*, 97 Pa. 15; *State Mutual Life Insurance Co.* v. *Forest*, 19 Ga. App. 296, 91 S. E. 428; *Mutual Life Insurance Company of New York* v. *Breland*, 117 Miss. 479, 78 So. 362, L. R. A. 1918-D 1009;

*Reliance Life Insurance Co.* v. *Hardy*, 144 Ark. 190, 222 S. W. 12; and *North* v. *Natl. Life and Accident Insurance Co.* (Mo. App.), 231 S. W. 665.

[1, 2] These cases all hold that where anything is due to the insured and he is in default, it is the company's duty to apply the amount so due upon the premium in default, and since it is the company's duty to do so, the courts will treat it as having been done and will not permit the policy to lapse so long as the amount which may be due is sufficient to carry it. . This seems to be the general law on this subject, but it is entirely irrelevant to the instant case unless there was at the date of the default on January 1, 1921, something due from the company to Mr. Phillips. There is nothing that inheres in the nature of a life insurance policy that gives it either a loan or cash value and it has none unless the contract so provides or some valid statute so declares. *Haskell* v. *Equitable Life Assurance Co.*, 181 Mass. 341, 63 N. E. 899. Vance on Insurance, page 40. It is nowhere claimed that there is any statute which affects this Florida contract. We must look to its face for governing provisions. The table which was copied into the record at page 38 gives to this policy *at the end of the third year* a cash loan value of $84.00, and gives no surrender value at an earlier date.

The rights and liabilities of the parties to the contract are set out in the policy and speak for themselves. They are as follows:

"Nonforfeiture.—After this policy shall have been in force three full years, the insured may elect within three months after any default in payment of premium, but not later, any one of the following options:

"Option 1.—Cash surrender value. Surrender this policy to the company at its home office for its cash value; or

"Option 2.—Paid-up life insurance. Have this policy endorsed by the company for a reduced amount of paid-up life insurance, payable at the same time and on the same conditions as this policy; or

"Option 3.—Paid-up term insurance. Have the insurance for the face amount of this policy, less any indebtedness hereon to the company, continued in force from date of default for such term as is hereinafter provided, but without the right to loans.

"The cash surrender value shall be equal to the entire reserve on the face amount of this policy, computed according to the American experience mortality table, and interest at the rate of three and one-half per centum per annum. Any indebtedness hereon to the company shall be deducted from the cash surrender value.

"The amount of the paid-up life insurance or the term of the paid-up term insurance shall be such as the amount of the cash surrender value, reduced by the amount of any indebtedness hereon to the company, will purchase, applied as the net single premium at the attained age of the insured, based on the American experience mortality table, and interest at the rate of three and one-half per centum per annum.

"The company reserves the right to defer the granting of a cash value for a period not exceeding sixty days after application therefor is made.

"Automatic nonforfeiture.—If the insured shall not, within three months from default, surrender this policy to the company at the home office for its cash surrender value, as provided in option 1, or for endorsement as paid-up life insurance as provided in option 2, the insurance will be automatically continued as provided in option 3."

The provision dealing with loans is as follows:

"Cash loan and nonforfeiture benefits.

"Cash loans.—At any time after three full years' premiums have been paid, and while this policy is in full force and effect, the company will advance to the insured, on the proper assignment of the policy and on the sole security thereof, the whole or any part of the cash surrender value available at the end of the policy year in which application for the loan is made; provided that from such loan interest thereon to the end of the then current policy year, together with any indebtedness hereon to the company and any unpaid portion of the premium for the current policy year, shall first be deducted.

"Interest on the loan shall be at the rate of six per centum per annum, payable in advance on each anniversary date of the policy. If interest is not paid when due, it shall be added to the principal and bear interest at the same rate. Failure to repay the loan or to pay interest thereon shall not avoid this policy unless the total indebtedness hereon to the company shall exceed the cash surrender value at the time of such failure, nor until thirty-one days after notice of such fact shall have been mailed by the company to the last known address of the insured, and of the assignee of record, if any, at the home office of the company. The company reserves the right to defer the granting of loans for a period not exceeding sixty days after application therefor is made, unless such loans are to be used to pay premiums on this policy."

[3] Remembering that doubtful expressions incorporated into contracts of insurance are to be construed strictly against the insurer, we reach the conclusion that while this policy had no cash value until the end of its third year, the insured did have the right, after the payment of "three full years' premiums," to a loan.

[4] That brings us to the plaintiff's claim, which, to

restate it, is this. He states that it is true that the full three years' premium had not been paid; that is, that the third year's premium had not been paid, but he says that since had it been paid he would have been entitled to a loan in excess of the sum so paid, we must hold that the company had to his credit that amount and was obliged to apply it upon his overdue premium.

The answer to all of this is that it violates the plain letter of the contract. From its express provisions it appears that no present cash value and no automatic extension attached as incident thereto until three annual premiums had been paid and until three full years had passed. This is the contract as written. Entered into by competent parties, not unlawful in itself, not contrary to public policy and in violation of no statute. It is not within the province of courts to whittle away by nice distinctions the patent meaning of plain English.

The insured had no right to a loan and no right to require that the insurance company do anything until he had made these payments, and the company could not be required to make them for him. To require the company to make this payment to the end that the loan might become available out of which the premium could be paid is to travel in a circle.

In *Orleans Parrish* v. *New York Life Ins. Co.*, 216 U. S. 517, 30 S. Ct. 385, 54 L. Ed. 597, cited by the plaintiff, the court, in discussing these loans, said: "The contract on the face of the note goes on to provide that if the note is not paid when due it shall be extinguished automatically by the counter credit for what we have called the reserve value of the policy. In short, the claim of the policyholder on one side and of the company on the other are brought into an account current by the very act that creates the latter. The so-called liability of the policyholder never existed as a personal

liability. It never is a debt but merely a deduction in account from the sum that the plaintiff ultimately must pay. In settling that account, interest will be computed on the item for the reason that we have mentioned, but the item never could be sued for any more than any other single item of a mutual account that any way shows balance against the would-be plaintiff."

For this case to be in point the loan has to run with the cash value of the policy, and no cash value, in the case in judgment, attached until three full years had passed. It is true that the right to a loan accrued immediately upon the payment of the third full annual premium, and might be for the cash value of the policy at the end of said year and on the sole security thereof. These conditions were reasonable. The payment of this third premium kept the policy alive to the end of the third year and it was then and not before that any cash value attached. This loan could not exceed this value, ran with it and could be cancelled by it. On the other hand, if this third premium was not paid the policy itself lapsed. It had no cash value and no value of any kind and the company could not have been required to make a loan on the sole security of a dead policy.

If the insured had no right to a straight loan he had none to one the proceeds of which might have gone to pay a defaulting premium.

The right to a loan cannot be measured by the purposes to which its proceeds might be applied.

[5] Much has been said about forfeiture and the readiness of courts to relieve against it. Looking to the substance of things, there is nothing here to forfeit. Certainly during the first three years following the execution of the contract, the company on its part agreed to keep the policy alive so long as the premiums were

paid and when they were not paid the contract was at an end.    We might as well speak of forfeiting a fire insurance policy at the end of the term for which it was written.

[6] Finally it is to be remembered:   "Promptness of payment is essential in the business of life insurance. All the calculations of the insurance company are based on the hypothesis of prompt payments.   They not only calculate on the receipt of premiums when due, but on compounding interest upon them.   It is on this basis that they are enabled to offer insurance at the favorable rates they do.   Forfeiture for nonpayment is a necessary means of protecting themselves from embarrassment.   Delinquency cannot be tolerated except at the option of the company."   *Klein* v. *Insurance Company,* 104 U. S. 88, 26 L. Ed. 662; *Mercer* v. *Atlantic Ins. Co.,* 111 Va. 699, 69 S. E. 961.

For the foregoing reasons we are of opinion the judgment should be reversed and the final judgment entered for the defendant.

*Reversed.*