# Richmond.

## Atlantic Life Insurance Company v. Margaret M. Bender.

### February 25, 1926.

1. Life Insurance—*Payment of Premiums—Application of Dividends—Inconsistent Positions—Case at Bar.*—In the instant case, an action on insurance policies, the insurance company claimed that the policies had lapsed. Plaintiff claimed that the dividends earned upon the policies, and applied to the purchase of nonforfeitable insurance, should have been changed so that the policies would have been kept in force. The dividends had been applied according to the terms of the policies, to the purchase of nonforfeitable in surance. The plaintiff sued to recover the additional insurance thus purchased and when the amount thereof was tendered into court accepted the same.

   *Held:* That the plaintiff could not occupy the inconsistent position of claiming that the dividends should have been used by the insurer to keep alive the contracts of insurance.

2. Life Insurance—*Policies Construed Against Insurer.*—It is a truism in the construction of insurance contracts that they are construed most strongly against the insurer and in favor of the insured where the meaning is doubtful. This, however, does not authorize a construction not justified by the language or intent of the parties.

3. Life Insurance—*Payment of Premiums—Agreement to Accept Note and Check in Payment—Return of Check Unpaid—Case at Bar.*—In the instant case, an action on life insurance policies, defendant company claimed that the policies had lapsed for nonpayment of premiums. When the premiums became due the company had no funds of the insured in its hands. Insured's dividends of the past years had been used to buy paid-up nonforfeitable additional insurance, and he had borrowed the full cash or loan values of the policies. One of the company's agents wrote insured agreeing to accept in lieu of the premiums and interest on the loan, all due in cash, a sum in cash and notes. The insured sent his check for the sum due in cash and the notes, but the check was returned unpaid on account of insufficient funds. The notes in terms declared that they were given to extend the time of payment of the premiums, and the premiums should not be considered paid until the notes were paid. The notes imposed no personal obligation on the insured to pay

the same. On their due date the insured could refuse to pay them without liability and the policies would have lapsed as of the date when the premiums were payable.

*Held:* That this agreement could not be considered as a payment, or an acceptance of the check and notes as payment of the premiums, and the policies were not extended to the date of the maturity of the notes.

4. LIFE INSURANCE—*Dividends and Surrender Value Cannot be Anticipated to Pay Premiums—Case at Bar.*—In the instant case, an action on life insurance policies, defendant company claimed that the policies had lapsed. After the expiration of the time for the payment of the premiums the company had agreed to accept a certain cash payment and notes of the insured. Insured sent the company his check for the cash payment and the notes. The check was returned unpaid by the bank for lack of funds. Plaintiff claimed that by virtue of the acceptance of the notes the right to dividends accrued to the policies, which with the notes more than paid the premiums for the year.

*Held:* That plaintiff's claim was not tenable.

5. LIFE INSURANCE—*Dividends and Surrender Value Cannot be Anticipated to Pay Premiums.*—Dividends and reserve or surrender value cannot be anticipated to pay the premiums, the payment of which is the condition precedent by the very terms of the policies to the creation of the same. Dividends and cash or loan values of life insurance policies do not belong to insurance unless created by statute or granted by the policies, and in the latter instance are subject to the terms and conditions contained therein.

6. LIFE INSURANCE—*Reinstatement of Policies—Certificate as to Insured's Health—Case at Bar.*—In the instant case, an action upon life insurance policies, after the policies had lapsed, the company agreed to hold certain notes of insured and to reinstate the policies, if the insured would send a certified check for a certain sum and a satisfactory certificate of his health. Insured sent the certified check and the certificate but the latter was unwitnessed and after some delay returned for proper execution. This was done, but insured died the next day.

*Held:* That the certified check and notes were not accepted in payment of the premiums, but were held by the company subject to his reinstatement, and insured could not be reinstated without satisfying the company that his health was as good as when the policies were first issued.

7. LIFE INSURANCE—*Reinstatement—False Health Certificate—Case at Bar.*—On an application for the reinstatement of life insurance policies which had lapsed for failure to pay the premiums, the insurance company required a certificate of health from insured. The certificate contained a question as to whether insured had been sick

or had been attended by a physician since the issuance of the policies. To this insured gave an untrue answer.

*Held:* That the answer to this question was material, and being untrue, the reinstatement if effected was invalid.

Error to a judgment of the Circuit Court of Northampton county, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Andrew D. Christian,* for the plaintiff in error.

*J. Warren Topping* and *J. Brooks Mapp,* for the defendant in error.

CHRISTIAN, J., delivered the opinion of the court.

The Atlantic Life Insurance Company, a Virginia corporation, on August 30, 1917, issued to Fred W. Bender two contracts of insurance for $1,000.00 and $5,000.00, respectively. Margaret M. Bender, his wife, was named as beneficiary in both contracts. Fred W. Bender, the insured, died suddenly on November 14, 1923. Mrs. Bender asked for payments under the contracts. The company refused payment, except $384.00 nonforfeitable additional insurance, upon the ground that the contracts had lapsed and were not in force at the time of Bender's death. Suit was brought on the policies by the beneficiary; there was a trial by jury, that returned a verdict for $4,775.45, which was the face value of the policies, plus the nonforfeitable insurance, amounting to $6,384.00, less certain credits due to the company. The defendant moved the court to set aside the verdict and grant it a new trial,

which motion was overruled, and judgment entered in favor of the plaintiff, whereupon the case has been brought before this court for review.

The evidence in the case consists mainly of the policies, correspondence between the agents of the insurer and the insured, the acts of the parties and the checks and notes given by the insured. There is practically no conflict in the evidence, and the correct decision of the case is the legal effect of the contracts of the parties.

The insured duly paid the premiums to be paid in the two contracts, including the premiums due to be paid on August 30, 1922. He procured a part of the sums so paid by borrowing against the values in the contracts. At the end of each contract year, *provided that the premiums for the next succeeding year had been paid*, the insured became entitled to receive a portion of the surplus earnings of the company allotted to these contracts as their share of the surplus earnings of the company. These allotments are styled "dividends." Upon the accrual of the right of the insured to a dividend, notice of the amount of the dividend was sent to him with the notice of the next premium, and he had several options, as follows: (1) Paid in cash, or (2) applied toward the payment of any premium, or (3) to the purchase of nonforfeitable additional insurance, or (4) left with the company to accumulate to the credit of his contract at three and one-half per centum per year. Unless the insured shall elect otherwise, within three months after the mailing by the company of a written notice requesting such election, it shall be construed as an election on the part of the insured to continue this contract under option No. 3. Prior to August 30, 1923, there had been alloted to the Bender policies $192.18 in div-

idends, which Bender failed to elect how they should be applied, and the company under the contract purchased therewith $384.00 additional nonforfeitable paid-up insurance.

Under policy contracts, there was a "cash surrender or loan value" on each policy, which after the payment of the premiums due August 30, 1922, amounted to $888.00. Pursuant to his right Bender borrowed, September 12, 1922, the full loan value of each policy, and executed two loan agreements for the amount of loan value of each policy, respectively, and assigned the policies for the loans. Had the loan values been available on August 30, 1923, it would have been the duty of the company upon nonpayment of premiums due them to have used them under the automatic nonforfeitable clauses of the two contracts to pay these premiums.

It will be observed that according to the contention of the company that on August 30, 1923, when the 1923 premiums became due, the company had no funds of the insured in its hands. Bender's dividends of the past years had been used to buy paid-up nonforfeitable additional insurance, and he had actually borrowed back the full cash or loan values. Premiums amounting to $308.04 and $53.28 interest on the loans were due on August 30, 1923, in order to keep the policies alive, and extend the loan for another year, but thirty days grace was given in the policies in which to pay the premiums before the policies lapsed. Bender had not paid the premiums or interest up to September 24, 1923, when one of the company's agents wrote him a letter agreeing to accept on or before September 30, 1923, in lieu of the premiums and interest, all due in cash, the sum of $89.36 in cash, and notes payable November 30, 1923, for the balance

due. The notes in terms declared their purpose to extend the time for payment of the premium, and said premium shall not be considered paid until this note shall have been paid. Bender sent his check for $89.36 and subsequently a check for $1.09 to correct an error in interest calculation, and the two notes aggregating $275.00.

The checks were duly deposited for collection and returned unpaid, on account of insufficient funds. On October 12, 1923, the company wrote Bender that by reason of the nonpayment of the checks his policies had lapsed, and requested him to fill in, sign, have his signature witnessed to the enclosed application for reinstatement and return it with certified check for $90.45. The former notes were held as part settlement of premium when policies were *reinstated*. Bender sent the certified check, the application for reinstatement filled in and signed, but failed to have same witnessed as required. The company sent the application for reinstatement back to Bender, who filled it in, signed, had same properly witnessed and returned on November 13, 1923, to the company for action. Bender died suddenly on November 14, 1923. The company contended that the policies had lapsed and never been reinstated, therefore refused to pay the beneficiary anything except the $384.00 nonforfeitable insurance which was paid into court and accepted by the plaintiff. So that the issue to be decided by the court was whether the policies were in effect when Bender died.

There are a great many interesting questions discussed in the briefs of counsel in this case, but they bear more or less remotely upon the main issue, and the rules of construction of insurance contracts and the incidental collateral and subsequent agreements have become so well settled either by statute or decision

that no good purpose can be served by discussing in detail the errors assigned.

The theory of the plaintiff's case is based upon that rule of law applied by the courts to lapses of life insurance policies for failure to pay premiums; that where the insurer is in any way indebted to the insured, or has any fund which can be used to keep the policy in force, it must do so, and prevent a forfeiture of the insured rights.

[1] It is earnestly contended in this court that the dividends amounting to $192.18, which had been applied to purchase of nonforfeitable insurance, should have been changed so that the policies would be kept in force. This position is not tenable, the dividends had been applied according to the terms of the policies. The plaintiff sued to recover the additional insurance thus purchased and when the amount thereof was tendered into court accepted the same. She cannot now occupy the inconsistent position of claiming that the dividends should have been used by the insurer to keep alive the contracts. The issue decided in the suit of *Stratton* v. *N. Y. Life Ins. Co.*, 115 Va. 257, 78 S. E. 636, is not similar to the one in the instant case. The method of application of dividends was not involved in that case. In the *Stratton Case* the nonforfeitable provisions of the policy provided that upon nonpayment of any premium, the insured might have the policy converted into paid-up insurance payable at the death for the amount fixed by the table in the policy, upon its surrender, but if the policy was not surrendered it was the duty of insurer to keep policy alive, without request so long as the amount of the reserve fund would extend same, and at the end of said term, if the insured is then alive, the policy should cease. Stratton borrowed $100.00 upon the

reserve value of the policy. He failed to pay all of
the next succeeding premium when the policy lapsed
on October 26, 1907. He died on November 13, 1907.
The reserve value of the policy on that date was
$142.22. The insurer deducted the $100.00 from the
reserve value of the policy and with the $42.22 pur-
chased paid-up insurance and tendered the amount
to the beneficiary. The court held that, under the
terms of the policy, the insurer should have kept the
policy in force, and the $42.22 would have extended
same for the full amount of the policy, $2,000.00, for
more than a year; the policy did not lapse. This
case is not authority to extend the policies in the
instant case by dividends used previously by consent
of the insured. The loan or reserve value of the
Bender policies had been fully used, when he defaulted
in the payment of the premiums on August 30, 1923.

The case of the plaintiff as presented in the plead-
ings and evidence and decided in her favor by the jury,
is set forth in the modification of instruction No. 1
offered by the defendant as follows: "If the jury
believe from the evidence that the premiums were
due on the two policies herein involved on August 30,
1923, for the payment whereof a grace of one month
was allowed the insured, and that the insured did, on
September 27, 1923, or thereafter, forward to defendant
his two checks for an aggregate of $90.45 on the
Farmers and Merchants Trust Bank of Cape Charles,
Virginia; and his two certain notes for $50.00 and
$225.00, respectively, dated the 30th day of August,
A. D. 1923, payable to defendant at Richmond, Vir-
ginia, on November 30, 1923; which checks and notes
purported to cover the premiums on said policies for
the year ending August 30, 1924, together with in-
terest upon said notes and upon the loan on said

policies, and that the said defendant did, on receipt of the checks and notes, send to the insured the receipts therefor introduced in evidence; and that said checks were, on the 6th day of October, 1923, presented to said Farmers and Merchants Trust Bank of Cape Charles, Virginia, for payment, and that payment was refused because of insufficient funds, then said policies of insurance and each of them lapsed as of August 30, 1923, and thereafter did not obligate the company in any way, and there can be no recovery thereon unless there were valid reinstatements of said policies. *Unless the jury believe from the evidence that the defendant accepted the two notes of August 30, 1923, for fifty and two hundred and twenty-five dollars, respectively, and that said two notes in conjunction with the dividend to become due on two policies, sued on, on payment of the premiums due August 30, 1923, exceeded the premiums due on said policies, or that two checks for $90.45 and certified October 23, 1923, and received by the defendant company on October 24, 1923, exceeded the premiums due, in either of which events, neither of said policies lapsed prior to the maturity of said notes on November 30, 1923."*

[2, 3] It is a truism in the construction of insurance contracts that they are construed most strongly against the insurer and in favor of the insured where the meaning is doubtful. This does not authorize a construction not justified by the language or intent of the parties. Applying this rule of construction to all the papers showing the agreements of the parties in reference to the insurance premiums in controversy, we find the company anxious that Bender pay his premiums and continue the policies in force. Bender is apparently indifferent, so that Swink the manager wrote two letters, dated September 24, 1923, to Bender

telling him that the grace period would soon expire and urging him not to let his policies lapse. The letters stated that if it was not convenient to pay the amount in full, the company would accept a cash payment of $90.45 and two notes for $275.00 for the balance. Two checks for the cash payment and the notes were sent by Bender, and received by the company, but the checks were not paid by the bank and on October 12, 1923, Bender was informed that the policies had lapsed. An examination of the letters, the receipts given by the company for the settlement and the notes will show that the purpose of the cash payment was to extend the policies until November 30, 1923, and on that date if the notes were not *paid* the policies lapsed as of August 30, 1923, and the notes were not an obligation upon the maker. The cash payment was essential to prevent the lapse of the policies—and in fact was the premium for three months, plus a portion of the interest—and the notes were promises to pay the balance of the premiums and interest on a specific day, but imposed no personal obligation on the insured to pay the same. On their due date the insured could refuse to pay them without liability and the policies would have lapsed as of August 30, 1923. This agreement could not be considered as a payment, or an *acceptance* of the check and notes as payment of the premiums.

"Promptness of payment is essential in the business of life insurance. All the calculations of the insurance company are based on the hypothesis of prompt payments. They not only calculate on the receipt of the premiums when due, but on compounding interest upon them. It is on this basis that they are enabled to offer insurance at the favorable rates they do. Forfeiture for nonpayment is a necessary means of pro-

tecting themselves from embarrassment. Delinquency cannot be tolerated except at the option of the company." *Klien* v. *Insurance Co.*, 104 U. S. 88, 26 L. Ed. 662; *Mercer* v. *Atlantic Insurance Co.*, 111 Va. 699, 69 S. E. 961; *Pacific Mutual Life Insurance Co.* v. *Turlington*, 140 Va. 748, 125 S. E. 658. .

The basis of the second paragraph of instruction No. 1 is that the notes given were part payment of the premiums due on August 30, 1923, and were so accepted notwithstanding their terms. If the notes had been absolute and unconditional promises to pay there might be some ground for this contention, but even then, the cash payment would be the condition precedent to credit for the balance. Courts are in duty bound to construe contracts of this nature favorably to the insured, but they cannot under the guise of construction make contracts for the parties.

[4, 5] By virtue of the acceptance of the notes the plaintiff claims the right to $54.90 dividends accrued to the policies, which, with the notes, more than paid the premiums for the year ending August 30, 1924. Dividends, and reserve or surrender value cannot be anticipated to pay the premiums, the payment of which is the condition precedent by the very terms of the policies to the creation of the same. Dividends and cash or loan values of life insurance policies do not belong to insurance unless created by statute or granted by the policies, and in the latter instance subject to the terms and conditions contained therein. *Pacific Mutual Life Insurance Company* v. *Turlington, supra.*

[6, 7] After the policies lapsed, the company held the notes and wrote to Bender agreeing to reinstate the same, if he would send a certified check for $90.45, and a satisfactory certificate of his health, the policies

would be reinstated. Thus another opportunity was given Bender to continue his insurance, if he would or could comply with the necessary conditions. He sent the certified check and certificate but the latter was unwitnessed and was, after some delay, returned for proper execution; this was done on the 13th day of November, 1923, and he died apparently of angina the next day. The certified checks and the notes were not accepted in payment of the premiums, but were held by the company subject to his reinstatement. He could not be reinstated without satisfying the company that his health was as good as when the policies were first issued. If the delay of the company in returning the certificate of health, and sending notice of the dates when the notes were due (which was not required by the terms of the notes themselves) should be considered a waiver of the form of the health certificate, still the health certificate was false in that it failed to inform the company of various attacks of indigestion which he had during the previous year and Dr. Goode's attendance upon him. Dr. Goode's testimony clearly showed that he had a serious heart trouble and was warned by his physician that unless he followed his instructions the consequences would be serious. The testimony shows that if the facts of Bender's attacks had been known to the company, neither it, nor any other life insurance company, would have accepted him for insurance.

The learned trial judge instructed the jury that the answer to question number two (which was that he had not been sick or been attended by a physician since the issuance of the policies) was material, and if it was untrue, then the reinstatement if effected was invalid. This instruction correctly states the law and the evidence fully sustains the same, therefore, while

the plaintiff excepted to giving the same, it is not brought up for consideration, and the jury could not find that the policies had been validly reinstated.

The jury could only have found for the plaintiff on the ground that the notes were part payment of the premiums, and the evidence not sustaining any such conclusion, the verdict of the jury is erroneous and must be set aside. The insurance policies lapsed against the earnest efforts of the company, due to the indifference and negligence of Bender and while a great loss has been sustained by his widow, sympathy will not justify sustaining the verdict, and this court will, upon the law and evidence, have to enter judgment in favor of the defendant.

The judgment of the trial court is reversed, and judgment for company ordered to be entered.

*Reversed.*