## LONABAUGH v. MOUNTAIN STATES LIFE INS. CO.

(District Court, D. Wyoming. July 24, 1926.)

No. 1540.

Insurance ☞367(1)—Provision that defaulted premium should be charged against a life policy as loans held not to apply until the policy by its terms had a "loan value."

An "automatic provision" of a life policy, that, if any premium was not paid within the period of grace allowed, it should be charged against the policy as a loan, provided the "loan value" was sufficient, and, if not, such value should be applied to keep the policy in force for so long as it would pay, *held* not to apply until the policy had been in force for such length of time as by its terms to have a guaranteed or loan value.

At Law. Action by Catherine Lonabaugh against the Mountain States Life Insurance Company. On demurrer to petition. Demurrer sustained.

Roy Bedford, of Sheridan, Wyo., and Albert D. Walton, of Cheyenne, Wyo., for plaintiff.

John Dillon, of Cheyenne, Wyo., Leslie E. Hubbard, of Denver, Colo., R. E. McNally, of Sheridan, Wyo., and Clarence M. Hawkins, of Denver, Colo., for defendant.

KENNEDY, District Judge. This is an action to recover upon a life insurance policy issued by the defendant upon the life of one Harvey Ellsworth Lonabaugh, in which the plaintiff, now his widow, is named as beneficiary. The petition is challenged by a general demurrer.

The pertinent facts disclosed by the petition, and the policy upon which the suit is based, are as follows: On March 27, 1921, the policy was issued, carrying an annual premium of $170.65, which insured the life of Lonabaugh for the sum of $5,000. The premium for the first year, beginning on March 27, 1921, was paid, as was that for the year beginning March 27, 1922, but the third premium, falling due March 27, 1923, was not paid at the time it became due or within the thirty day's grace therefor provided by the policy, nor before the death of Lonabaugh, which occurred on the 13th of January, 1924.

Some of the provisions of the policy which are pertinent to the points involved, are as follows:

"Nonforfeiture Provisions.

"Cash value—After three full years' premiums have been paid and this policy is in full force, free from indebtedness and unassigned, the insured may, if elected prior to the expiration of any grace period and upon proper surrender of this policy, receive the then cash value, or apply the said cash value to purchase.

"Paid-up insurance, nonparticipating, for a reduced amount payable at the same time and in the same manner and condition as this policy; or apply the said cash value to purchase.

"Extended insurance, for the face amount of this policy for a limited term of years.

"The cash, paid-up, and extended values referred to above shall be such as are shown opposite the age of the insured (as stated in this policy), in the table of guaranteed values on page three (3) hereof. The amounts so payable may be increased by any dividend additions or decreased by any loans or other indebtedness."

"Automatic Provision.

"If any premium herein is not paid before the expiration of the grace period, the same plus interest shall be charged against the policy as a loan, providing the loan value is sufficient for such advance after deducting any existing loans and accrued interest; provided, however, that, if not sufficient to cover the entire premiums then due, a premium for such period shall be charged, as the available values are sufficient to cover. Notice of such advance shall be mailed to the insured, and at any time while this policy is thus sustained in force the payment of premiums may be resumed."

"Privileges.

"Thirty days' grace will be allowed for the payment of every premium after the first, during which time this insurance shall be continued in force. If the proceeds of this policy should become due by death of the insured during said grace, the entire premium for the then current policy year will be deducted from the amount payable."

"Reinstatement (not material).

"Change of beneficiary (not material).

"Premium payments—All premiums are payable in advance at the home office of the company, in Denver, Colo., or to a duly authorized collector of the company, upon delivery of a receipt signed by the president, a vice president, secretary, assistant secretary, or treasurer of the company, and countersigned by such collector. The insurance under this policy is based upon annual premiums payable in advance, but payments, after the first, may be made annually, semiannually, or quarterly at the premium rates in use by the company. Failure to pay premiums in accordance with the terms of this policy renders the policy null and void, except as herein provided."

"Assignments (not material).

"Loans—At any time while this policy is in force, except as extended insurance, after three full years' premiums have been paid, the company will advance on proper assignment and delivery of this policy, and on the sole security thereof, a sum which with interest, shall not exceed the cash value at the end of the then current policy year (as stated in the table of guaranteed values on page 3), deducting any indebtedness to the company thereon and all unpaid premiums to the end of the then current policy year. Interest shall be at the rate of 5½ per cent. per annum, and shall be payable in advance on the premium anniversary date of this policy. The loan may be increased by the cash value of dividend additions credited to this policy, if any. The granting of the same may be deferred by the company for a period not exceeding sixty days after receipt of application therefor. Failure to repay such loan or to pay interest thereon shall not void this policy unless the total indebtedness thereon shall equal the total loan values, nor until at least one month after notice shall have been mailed by the company to the last-known address of the insured and of the assignee, if any."

"Table of Guaranteed Values.

"The values in the following table are for full paid policy years, subject to any indebtedness and will be adjusted proportionately for additional installments or premiums beyond the full paid policy years. The figures shown opposite the age set forth on the first page hereof are the values that apply on this policy. All other figures shown at other ages are not a part of this contract.

| Age | End of Policy Years | 3 | 4 | 5 | 6 |
|-----|---------------------|---|---|---|---|
| 29 | Cash or loan—Dollars | 180 | 280 | 380 | 490 |
| | Paid-up ins.—Dollars | 525 | 790 | 1055 | 1326 |
| | Extended years and days | 4—207 | 7—94 | 9—363 | 12—358 |

It is the contention of the plaintiff, and is so alleged in the petition, that under the terms of the policy, although the premium due and payable at the beginning of the third year of the policy on March 27, 1923, was not paid then or within the period of grace or at any time before the death of the insured, yet under the automatic provision above quoted it became the duty of the insurance company to charge the premium then due against the loan value of the policy and to notify the insured by mail of such action by the defendant company, which the defendant company failed to do, the then loan value of the policy, less the interest for one year, being sufficient to pay the premium so as to keep the policy alive for the third year, carrying it into full force and effect beyond the time that the death of the insured occurred.

On the other hand, it is the contention of the defendant company that, under the terms of the policy at the time of the default in payment of the third annual premium, said premium not having been paid, the policy had no loan value, either privileged or guaranteed, and as a result there was nothing upon which the automatic provision of the policy could operate.

It will be noted by the above-quoted provisions of the policy, that under the heading "Nonforfeiture Provisions," after three full years' premiums have been paid and the policy is in full force and effect, the insured may have elected, prior to the expiration of any grace period and upon proper surrender of the policy, to have received the then cash value or have applied the cash value to purchase; also that, under the heading "Privileges" and subheading "Loans," it is provided that, after three full years' premiums have been paid, the company will advance upon proper assignments and delivery of policy and upon the sole security thereof a sum which with interest shall not exceed the cash value at the end of the then current policy year as stated in the table of guaranteed values; also that, under the "Table of Guaranteed Values," the cash or loan values begin at the end of the policy years and in this case at the end of the third policy year.

It seems to this court that the paramount question in the case is to what feature of the policy the automatic provision using the

term "loan value" applies. If it applies to the provision of the policy under "privileges" permitting loans, then the insured had no right to make a loan upon the policy until the third annual premium had been paid. If it applies to the table of guaranteed values, no loan value had accrued until the end of the third policy year, and the premium for the third policy year not having been paid, and the death of the insured having occurred before the end of that year, there was no loan value at any time upon which the automatic provision could operate.

It must be borne in mind that, while the policy provides that on the payment of the third annual premium there is extended to the insured the privilege to make a loan upon his policy in an amount equivalent to the cash or loan value, interest deducted, at the end of the third policy year, yet this is nothing more than a privilege extended, and, while it is entirely consistent with, it is yet entirely independent of, the guaranteed loan value at the end of the third policy year.

To hold that the automatic provision applies to the loan privilege instead of to the guaranteed loan value would be an attempt to breathe life into a privilege extended to, but never exercised by, a man now dead. But to hold that the automatic provision applies to the guaranteed loan value relieves a forced construction, as the latter is fixed and determined by the contract of insurance, and in no sense depends upon a privilege extended, but upon a right guaranteed to the insured.

The third annual premium not having been paid at the beginning of the third year, or within the days of grace, the policy lapsed under the "premium payments" provision, never having had a loan value.

Two cases are chiefly relied upon by counsel in support of their divergent contentions. Plaintiff cites Friend v. Southern States Life Ins. Co., 80 Okl. 76, 194 P. 204, and the defendant cites Pacific Mut. Life Ins. Co. v. Turlington, 140 Va. 748, 125 S. E. 658. In the latter case is cited Klein v. Ins. Co., 104 U. S. 88, 26 L. Ed. 662, in which it is said: "Promptness of payment is essential in the business of life insurance." This court has not the time to discuss the two cited cases, but notes that the Friend Case was decided by a divided court. It is probable that the two cases advance opposite views as to the point here involved, although the policies on which those actions were brought are somewhat different in their terminology from the one in the case at bar.

No cases have been cited where the point has been considered by a federal court.

In the view which this court takes of the construction of the particular policy here involved, it leads to the conclusion that the demurrer to the petition must be sustained, and it is so ordered, allowing proper exceptions to the plaintiff.