**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MICHAEL F. GELARDI, Trustee of
Centurion Health Trust; ELI S.
CHOVITZ, Trustee of Centurion
Health Trust; MICHAEL T. LEIBIG,
Trustee of Centurion Health Trust;
ROBERT W. MATHIESON, Trustee of

Centurion Health Trust,
Plaintiffs-Appellants,

v.

ATLANTA LIFE INSURANCE COMPANY,
Defendant-Appellee.

No. 96-1403

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Raymond A. Jackson, District Judge.
(CA-95-722-2)

Argued: January 30, 1997

Decided: July 16, 1997

Before HALL and ERVIN, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished opinion. Senior Judge Butzner wrote the
opinion, in which Judge Hall and Judge Ervin joined.

_____

**COUNSEL**

**ARGUED:** Wyatt B. Durrette, Jr., DURRETTE, IRVIN & BRAD-
SHAW, P.C., Richmond, Virginia, for Appellants. James Strother

Crockett, Jr., MAYS & VALENTINE, Richmond, Virginia, for Appellee. **ON BRIEF:** Barrett E. Pope, John C. Warley, Arnold C. Moore, Jr., DURRETTE, IRVIN & BRADSHAW, P.C., Richmond, Virginia, for Appellants.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

BUTZNER, Senior Circuit Judge:

Michael Gelardi and three other trustees of Centurion Health Trust appeal the order of the district court granting summary judgment to Atlanta Life Insurance Company. We affirm the order on slightly different grounds than those stated in the opinion of the district court. Jurisdiction is based on 28 U.S.C. § 1331 (federal question).

I

Centurion is a health insurance trust that was established by the Virginia Beach Police Benevolent Association (PBA) and Ocean Breeze Festival Park, Inc., pursuant to their collective bargaining agreement. The trust marketed a health benefits package to PBA and others. Centurion purchased stop-loss insurance for its health insurance plan from Atlanta Life pursuant to a one-year contract executed on August 1, 1994. The stop-loss contract obligated Atlanta Life to reimburse Centurion for payments it made in excess of a stipulated amount. Centurion and Atlanta Life each employed insurance specialists who conducted their day-to-day business and whose correspondence is relevant to this case. For simplicity, however, we will refer to Centurion and Atlanta Life instead of their agents who actually wrote the letters.

On January 20, 1995, Atlanta Life informed Centurion that effective February 28, 1995, the policy would be cancelled because of dif-

2

ficulties Centurion was having with state insurance departments. After discussion between the parties, Atlanta Life wrote a letter dated February 28, 1995, stating that the policy "will be extended to midnight on March 31, 1995 provided all premiums remain current and paid in full." The same day Centurion responded by noting receipt of the letter "extending" coverage to March 31 and by paying the February premium.

Centurion failed to pay the March premium, claiming that it never agreed to the extension for March coverage. Atlanta Life offset the unpaid premium against a claim filed by Centurion in February on behalf of Wayne Schelb. The claim sought reimbursements for benefits Centurion had paid to Schelb during February. In May, Centurion filed an additional Schelb claim for reimbursement, most of which also had been paid in February. Centurion later withdrew $824.22 from the additional Schelb claim when it realized that this amount had been paid to Schelb in March.

Centurion sued for failure to pay the Schelb claim. Atlanta Life moved for summary judgment on the grounds that the Schelb claim was properly offset by the unpaid March premium. In its cross-motion for summary judgment, Centurion claimed that it did not owe the March premium because Centurion never agreed to extend coverage through March 31, as evidenced by the fact that it did not pay the March premium. The district court granted Atlanta Life's motion for summary judgment and denied Centurion's cross-motion for summary judgment. The court also ruled as a matter of law that Atlanta Life was entitled to offset the Schelb claim against the March premium.

II

We review summary judgment orders de novo. United States v. Carolina Transformer, 978 F.2d 832, 835 (1989). The sole legal issue in this case is whether Atlanta Life was authorized to offset the Schelb claim against the unpaid March premium. Resolution of this issue depends on an underlying question--did Centurion owe a premium for March coverage? The district court ruled that Atlanta Life's February 28 letter was an offer for a new contract for stop-loss coverage through March 31, 1995, which Centurion accepted.

3

We affirm the district court on slightly different grounds. We view Atlanta Life's letter of February 28 as an offer "extending" the policy through March 31 provided all premiums remain current and are paid in full. The letter written by Centurion the same day acknowledged Atlanta Life's letter "extending" coverage through March. The same letter enclosed a check for the February premium. Atlanta Life has produced sufficient evidence showing that the parties mutually agreed to the extension of coverage. On February 28, the February premium was outstanding and the 30-day grace period was about to expire. Centurion immediately sent in payment of the February premium, the only premium that was not "current" or "paid in full" as of February 28, 1995.

We are not persuaded by Centurion's contention that the extension of the policy was conditioned upon payment of the March premium. The March premium was not "due" or "current" on February 28. It did not become due until March 1 and the grace period gave Centurion until March 31 to pay the premium, the same day the extended stop-loss coverage would be cancelled.

Two of Centurion's trustees testified that they understood that the stop-loss coverage would extend through March 31 provided that the February premium was paid. It was the trustees, with whom the decision to purchase stop-loss insurance was vested, who directed payment of the February premium. Robert Mathieson, Centurion trustee and President of the Virginia Police Benevolent Association, testified that by reason of the letter from Atlanta Life he understood that Centurion would have stop-loss coverage through March 31. Another trustee, Michael F. Gelardi, believed that Atlanta Life would provide coverage through March, though he thought such coverage would be "free." Gelardi thought that "free" coverage was in consideration of Centurion allowing Atlanta Life to cancel coverage before August 1, 1995. Centurion cites no communication from Atlanta Life to this effect. Centurion has not offered any other evidence to support this theory.

We find additional support of Centurion's intent to keep the policy in force through March by its procurement of a substitute stop-loss policy with John Alden Insurance that went into effect April 1, 1995. Mathieson testified that the trustees never elected to forego stop-loss

4

coverage during March 1995. Centurion contends, contrary to the testimony of two of its trustees, that the Atlanta Life policy was not in force during March. Centurion never introduced testimony from its other two trustees. It offers no evidence to explain why the John Alden policy or any other replacement coverage was not in force during March.

Centurion also contends that Atlanta Life never believed that a March premium was owed because it did not demand the premium until May 1995. To support its position, Centurion points to a May 22, 1995, memorandum written by the underwriter for Atlanta Life's policy. This memo, written shortly after initial settlement negotiations between the parties had broken down, stated that an underwriting officer had suggested that Atlanta Life demand the March premium since "no deal was finalized." This evidence does not establish that Centurion owed no premium for March.

Based on the letters exchanged on February 28, 1995, the testimony of Centurion's two trustees, and the replacement insurance purchased by Centurion effective April 1, 1995, we conclude that Centurion agreed to accept the offer which extended their stop-loss policy with Atlanta Life through March 31, 1995.

III

Since the policy was extended, its original terms remained in effect. Two relevant provisions of the policy were the "Grace Period" and "Offset" provisions:

> 3.2 Grace Period.  A Grace Period of thirty (30) days from premium due date shall be allowed for the payment of each premium. . . . Coverage shall terminate at the end of the Grace Period if any premium due remains unpaid at the end of the Grace Period.

> * * *

> 8.10 Offset. [Atlanta Life] shall be entitled to offset claim reimbursements to [Centurion] against any amount due and unpaid by [Centurion] under the Policy.

5

When Centurion did not pay the premium by the end of the March grace period, Atlanta Life offset the Schelb claim against the unpaid premium in accordance with the express terms of the offset provision.

Virginia law provides additional support for Atlanta Life's right to offset the Schelb claim against the March premium. In Pacific Mutual Life Insurance Co. v. Turlington Adm'r., 140 Va. 748, 753, 125 S.E. 658, 660 (1924), the Virginia Supreme Court, in dicta, stated the rule that a life insurer had a duty to apply any outstanding amounts due the insured to any unpaid premium. Such a rule advances the public policy of keeping coverage in force as long as there are available assets to pay for it. We do not agree with Centurion's contention that this rule should be limited to the facts of Pacific Mutual which involved "life insurance policies covering aging individuals clearly lacking even minimal levels of business sophistication." (Centurion brief at 14). Centurion argues that "a court's zealous efforts to protect such people is hardly surprising and contrasts sharply with this case, wherein commercial insurance is being negotiated between two astute, experienced business entities." Id.  It is Centurion's thousands of persons that it insures, not Centurion, whom the rule is designed to protect. If the public policy against forfeiture will protect a single insured who causes his or her own default, it should certainly protect a whole group of insureds whose stop-loss coverage lapses through no fault of their own. The district court succinctly stated:

> [I]t would be unusual behavior for an entity such as Centurion not to obtain coverage for its members at all times. [Centurion] failed to produce sufficient evidence to convince the Court that it chose such a dangerous and unusual course of action. The Court therefore is not persuaded to abandon the public policy embodied by traditional Virginia insurance law.

IV

Centurion argues that even if coverage continued through March, failure to pay the March premium by the end of the grace period terminated coverage retroactively to the day prior to the start of the 30-day grace period. Centurion draws this conclusion from the termination provision in the policy which reads:

6

2.2 <u>Termination of Coverage</u>. . . .[Centurion's] Coverage Period, and the coverage hereunder, shall be terminated by [ALIC] upon not less than thirty (30) days prior written notice of [ALIC] on the earliest of:

* * *

(7) if any premium remains unpaid at the end of the Grace Period, then retroactively to the day before the due date of such unpaid premium.

Atlanta Life argues that this provision simply makes the notice of termination retroactive, not the termination itself.

Ambiguous language in insurance policies are resolved in favor of the insured. <u>Cuna Mut. Ins. Soc. v. Norman</u>, 375 S.E.2d 724, 725, 237 Va. 33, 36 (1989). But the termination provision of this policy, despite its tortured language, is not ambiguous. This provision refers to the notice of termination that is retroactive. There are three grounds to support this interpretation. First, Centurion's view that coverage terminates at the beginning of the month for which it is in default directly conflicts with the "Grace Period" provision which states: "if a premium is unpaid at the end of the Grace Period, the policy terminates at the end of the Grace Period." Second, accepting Centurion's view would lead to a perverse result. If failure to pay a premium by the end of a month retroactively terminates coverage at the beginning of that month, Centurion could avoid its obligation to pay the March premium by simply waiting to see whether any claims were filed. Third, Centurion's argument falls prey to the offset provision. The contract and the law provided that the Schelb claim, which accrued in February, be automatically offset against the unpaid March premium. Since the March premium was paid on time by operation of the offset provision, there was no default to trigger Centurion's interpretation of the termination provision.

V

We conclude that the stop-loss policy was extended, that Centurion owed the premium for March and that Atlanta Life was authorized to

7

offset the Schleb claim against the unpaid premium as a matter of law. The district court properly granted summary judgment in favor of Atlanta Life.

AFFIRMED