Isaac S. Heller, Respondent, *v.* Louis Yaeger, Appellant.

First Department, December 1, 1939.

*William H. Yaeger*, for the appellant.

*Albert A. Raphael* of counsel [*Gallert, Hilborn & Raphael,* attorneys], for the respondent.

Townley, J. This action was brought to foreclose a lien on 1,700 shares of the stock of Burns Brothers deposited as security for a note for $5,000 made by defendant to the order of the plaintiff. This note bore interest at six per cent and was not paid at maturity. The making of the note is admitted and the only question litigated was the defense of usury. The claim of usury is based on the fact that at the time the original note and again when a renewal note was given, the lender exacted from the borrower releases of contingent claims which the borrower had against the lender.

The court found that in May, 1936, the defendant, who is an investment counsel by profession, made a contract with the plaintiff under which he was to receive as compensation for his services in advising the plaintiff in the purchase and sale of securities, ten per cent of any profits realized upon the sale of those securities. When the loan was made on September 9, 1937, the plaintiff owned certain stocks and bonds purchased by him under the agreement.

At the trial it was admitted that a general release dated September eighth and acknowledged on September ninth before a notary

in plaintiff's building was delivered by defendant to plaintiff. Plaintiff was not called as a witness, and rested on defendant's case without rebuttal. His examination before trial was read into the record. In this examination he testified that the release was delivered on September eighth. The claim is, therefore, made that the release could not have been part of the consideration for the note made on September ninth. There were no other transactions between the parties on September eighth or ninth except the loan transaction which resulted in the giving of this note. No reason whatever is given for defendant's making a gift of the proceeds of his contract to the plaintiff. The plaintiff is a lawyer and the release was prepared by him. The fact that it was not acknowledged until September ninth, though dated September eighth, and that the acknowledgment was taken before a notary in plaintiff's building indicates very strongly that it was given in part consideration of the loan. Defendant testified that the agreement for the loan was made on September eighth, that on the ninth he arranged with his brokers for the release of the collateral agreed on, went to plaintiff's office and closed the transaction by signing the note and executing the release before a notary in the same building. This testimony is in accord with all the probabilities, and we are satisfied that it is true. The contrary finding of fact found by Special Term is against the weight of the evidence.

A renewal note was given on November thirtieth and another general release given at that time canceled all plaintiff's obligations to defendant as of that date. In the examination before trial the plaintiff stated that the second release was delivered to " straighten out " an option held by the defendant to repurchase from the plaintiff certain shares of Chicago and Northwestern Railway. The plaintiff also stated in the examination before trial that this option had already expired. If it had, there was no reason for the release. The defendant testified that the second release was exacted by the plaintiff to cancel an obligation to pay a share of the profits on ten St. Louis and Southwestern general mortgage bonds purchased by the plaintiff with the advice of the appellant under the contract of May, 1936. These bonds were certainly purchased by the plaintiff on October eighth and ninth and it is evident that, to be freed of any possible claim for profits on the resale, plaintiff required another release. There were statements in the examination before trial as to other matters which should have indicated to the trier of the facts that plaintiff's testimony was subject to serious suspicion. We find that the second release was given as part of the consideration for the renewal note.

Where a borrower, in addition to the promise to pay six per cent interest, surrenders also a contingent right to profits, the transaction is usurious. In *Diehl* v. *Becker* (227 N. Y. 318) a borrower agreed to pay six per cent and in addition part of the proceeds of certain patents in the event that such patents were sold. The court said: " Payment of principal and interest did not end all obligations under the contract. If ever thereafter the borrower sold his patents, the bonus became due. It is true he might not sell them. But in any event the plaintiff was entitled to his principal and interest and in addition thereto he acquired this contingent right." Similarly, in the present case, plaintiff was entitled to six per cent interest absolutely and in addition was freed from the contingent duty to pay ten per cent of the profits if in the future on the resale of the securities which he held there should be a profit. In *Cleveland* v. *Loder* (7 Paige, 557) the borrower agreed to pay legal interest and permitted the lender to retain certain securities at stated prices. The court said that the possibility of making more than legal interest for the loan was enough to make the transaction usurious. " Whenever the lender stipulates even for the chance of an advantage beyond the legal interest, the contract is usurious, if he is entitled by the contract to have the money lent with the interest thereon repaid to him at all events." (See, also, *Browne* v. *Vredenburgh*, 43 N. Y. 195.)

The judgment should be reversed, with costs, and judgment should be entered on the counterclaim as prayed for, with costs.

MARTIN, P. J., and UNTERMYER, J.. concur; COHN and CALLAHAN, JJ., dissent and vote to affirm.

CALLAHAN, J. (dissenting). Plaintiff sued to recover on a certain promissory note and for the foreclosure of his lien on collateral security received in connection therewith. Defendant pleaded usury as a defense and by way of counterclaim, and sought judgment canceling the note and directing the return of the collateral.

On the trial the plaintiff's cause of action was admitted, subject to the defendant's defense and counterclaim. Defendant, having assumed the burden of proof, read into evidence parts of a deposition made by the plaintiff on his examination before trial. Plaintiff read other parts of the same deposition. Defendant testified as a witness in his own behalf. Numerous exhibits were placed in evidence by both sides. Defendant then rested and plaintiff moved to dismiss the counterclaim. This motion was granted by the court after some discussion. Plaintiff then moved for judgment in his favor, whereupon the following colloquy took place: " The Court: Is there any rebuttal testimony? Mr. Raphael

(plaintiff's counsel): I thought your Honor granted the motion. The Court: I granted the motion to dismiss the counterclaim. I am now asking you if there is any rebuttal testimony. Mr. Raphael: No rebuttal testimony. The Court: Then say so. Mr. Raphael: The plaintiff rests. The Court: Make your motion. Mr. Raphael: I move for judgment in favor of the plaintiff for the relief demanded in the complaint. The Court: Motion granted with an exception to the defendant. The Court finds that as a matter of law no usury under Section 370 of the General Business Law or as indicated in Section 371 of the same statute, has been established by creditable proof. Exception to the defendant. I will give you thirty days stay of execution."

What the trial court meant in calling for rebuttal testimony is not altogether clear. As the counterclaim was dismissed, the defense based on the same contention of usury likewise fell. The dismissal of the counterclaim, under the circumstances, would appear to have been one for failure of proof.

Appellant recognizes this, for in his briefs he contends that he introduced *prima facie* proof of usury. He asks that all disputed questions of fact be resolved in his favor, thus seeking the benefit of the rule of law applicable when the question is whether a *prima facie* case was presented.

Under the circumstances, even if we should reverse the judgment upon the ground that *prima facie* proof of usury was introduced, we should order a new trial and not grant to defendant a judgment on the merits. If we proceed on the theory adopted by the majority, that plaintiff indicated that he intended to rest on defendant's case, and that the issue of usury thereupon became one for the trial court, then appellant is not entitled to the benefit of the most favorable inferences, but the trial court was entitled to draw such inferences from the proof as it deemed proper. So viewed, we think that upon this record the judgment should be affirmed. The evidence did not establish by a fair preponderance thereof that plaintiff received any consideration beyond six per cent for the forbearance of the loan of $5,000.

The defendant's contention was that, in order to secure the loan, he was required to release certain contingent claims for possible profits under agreements made with plaintiff at a time long before the loan was requested, whereby defendant acted as investment counselor to plaintiff.

Plaintiff contended that these releases were not part of the transaction involving the loan, but that they were delivered in order to wind up separate business transactions before a loan would be made.

Defendant's claim for contingent profits was extremely tenuous, for the agreement under which the profits might become due required completed transactions of purchase and sale, with resultant profits. It was conceded that no such completed transaction had taken place as none of the stocks had been sold.

One of the elements of usury is the existence of a corrupt purpose or intent, and, therefore, the trial court would be required to find, before determining that there was a usurious transaction, that it was the intention of plaintiff to obtain something of value beyond six per cent interest as an additional consideration for the loan. The burden of proving usury rests on the person asserting same and every presumption is against the violation of the law which usury involves. If a transaction can be construed in such a way as to render it valid, such construction should be given it rather than one which would render it illegal and criminal.

In *Stillman* v. *Northrup* (109 N. Y. 473), the court said (at p. 478): " The defense of usury involving crime and forfeiture cannot be established by mere surmise and conjecture, or by inferences entirely uncertain. If, upon the whole case, the evidence is just as consistent with the absence as with the presence of usury, then the party alleging the usury has failed; and so it has been repeatedly held."

Defendant's assertions concerning the circumstances under which the releases were delivered lacked conviction, and were evidently afterthoughts. His claims appear to be contradicted in several respects by letters and other documents in the case. Several months after the making of the first loan a renewal note was delivered, dated December 9, 1937. Defendant claimed that he had been required to give a second release as part of this renewal. The release referred to was dated November 30, 1937, or a week before the date of the renewal note. Appellant contends in his brief that the renewal note was delivered on November 30, 1937, but we find nothing in the record to support that contention.

The explanation given by defendant for the second release was that it was to discharge a contingent claim for profits held by defendant as investment counselor in connection with the purchase of certain St. Louis and Southwestern bonds which were bought by the plaintiff after the first loan was made.

Plaintiff, on the other hand, claimed in his examination before trial that the purpose of the second release was to eliminate any claim by defendant in connection with certain Chicago and Northwestern stock which defendant had sold to plaintiff under an option whereby defendant might repurchase the same. This option had apparently expired. Defendant had written asking for more time. The documentary proof supports plaintiff's rather than defendant's

claim with respect to the obligations outstanding upon the date of the second release. In fact, we find no proof in the record of any new agreement to pay for services as investment counselor made after the execution of the first release. Though defendant referred to the purchase of the St. Louis and Southwestern bonds thereafter, he gave no testimony showing the making of any new agreement for sharing profits.

Assuming, therefore, that the judgment is to be considered one on the merits, after both sides had rested their proof, it should be affirmed, as it was well within the province of the trial court to determine that usury was not satisfactorily proved.

The judgment should be affirmed.

COHN, J., concurs.

Judgment reversed, with costs, and judgment directed in favor of the defendant, with costs. Settle order on notice, reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.