ROBERT BLUMENTHAL and Others, as Executors, etc., of ADOLPH BLUMENTHAL, Deceased, Plaintiffs, v. EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Defendant.

Supreme Court, Special Term, New York County, March 26, 1940.

*Davidson & Davidson* and *Emil H. Wasserberger*, for the plaintiffs: *Alexander & Green* [*James D. Ewing* of counsel], for the defendant.

ROSENMAN, J.   The defendant issued a life insurance policy in the sum of $100,000 to Adolph Blumenthal on June 9, 1927.   The effective date of said policy was March seventh of that year, and annual gross premiums of $4,848 were payable thereon in advance on the latter date each year.   The insured paid such premiums for eight years, up to and including the one due March 7, 1934.   At the end of said policy year, namely, March 6, 1935, the reserve (that amount, plus annual accruals, figured on the basis of mortality tables put aside as a contingency fund to protect any necessary payment on the policy upon death, which, by law, the company must retain apart from its other liabilities and expenses) on the policy was concededly $19,936, and the loan value thereof (that amount the insured may borrow on the security of the policy alone, based upon the accruals of reserve by reason of past payments of dividends), as provided in said policy, was $19,400.   It is also conceded that the terminal reserve and loan value at the end of the ninth policy year were respectively $22,501 and $22,200.

The insured did not pay the ninth annual premium on its due date (March 7, 1935), but during the ensuing grace period he applied for a loan primarily for the purpose of paying the then due premium. The defendant, complying with the insured's request, advanced the sum of $20,936.34 on April 8, 1935.   This sum was calculated on the basis of a prior indebtedness of $16,916.34 on the policy, plus the premium payment of $4,848 less the dividend of $828, which had been apportioned to the said policy, and which was then payable to the insured according to its terms.

The tenth annual premium which became due on March 7, 1936, was not paid.   The insured died on May 28, 1936, and the defendant denied liability on the policy on the ground that at the date of the default in payment of said tenth annual premium, i. e., March 7, 1936, the policy had a cash value of $22,200, against which was the insured's indebtedness of $20,936.34 plus interest of $1,149.49, making a total indebtedness of $22,085.83.   The remaining equity in the policy, claimed the defendant, was sufficient, under option (c) of the non-forfeiture clauses of the policy, to continue the insurance in force as paid-up extended term insurance up to March 30, 1936, and since the insured died approximately two months thereafter, the plaintiffs had no right in the policy, as it had no value.

The plaintiffs, as beneficiaries, brought this action, claiming that at the time the loan was made, the reserve on the policy ($19,936) against which the loan was permitted, was less than the amount of the loan ($20,936.34) and hence invalid under subdivision 8 of section 16 and subdivision 7 of section 101 of the Insurance Law.

They assert that since the loan was void, it should be disregarded in computing the equity on which extended term insurance is to be computed, and that, therefore, there was sufficient remaining equity in the policy to keep it in force as paid-up extended term insurance at least to the date of the insured's death.

The defendant contends that when the loan transaction was completed as of March 7, 1935, the reserve was no longer $19,936 but had been increased to $22,501; that it was, therefore, large enough to warrant the loan of $20,936.34 as made; and that, therefore, the loan was not illegal.

The plaintiffs base their contention on the conceded actuarial facts that the amount of a reserve is established and fixed by the premiums already paid by the insured, that this insured should *first* have paid the 1935 premium in order for the reserve to be sufficient to permit as large a loan as was made. The defendant contends that the advance and the deduction of the premium therefrom were all part of one simultaneous transaction, so that the ninth annual premium, which was paid at the same time as the loan, raised the reserve to a sum where the loan was in accordance with the statute.

Both plaintiffs and defendant now move for summary judgment under rule 113 of the Rules of Civil Practice. No question of fact is presented on this motion; the sole question is whether the loan made by the defendant to the insured was illegal and void. If it was not, then the policy has lapsed even under the extended term, and the defendant is entitled to judgment.

The facts justify the contention made by the defendant that " the making of the said advance and deduction and repayment of the said existing indebtedness and payment of the said premium with the balance of the said advance of $4,020 and the 1935 dividend of $828 were all done in one simultaneous bookkeeping transaction."

Although the insurance company and its insured do not deal with each other on an equal footing, there is no showing or claim here that in making the loan the defendant acted fraudulently or attempted to overreach proper bounds in its relation with the deceased. The claim is that by the loan to the insured, the primary purpose of which the plaintiffs admit was to enable him to pay the March 7, 1935, premium then due and payable, the defendant violated subdivision 8 of section 16 and subdivision 7 of section 101 of the Insurance Law. Subdivision 8 of section 16 provides that a loan may be made to an insured in " a sum not exceeding the lawful reserve " which the company holds thereon, and such loan under subdivision 7 of section 101 may be equal to or less than

" the reserve at the end of the current policy year on the policy and on any dividend additions thereto " less existing indebtedness and " any unpaid balance of the premium for the current policy year."

But in the present case the loan was not in excess of the reserve created at the same time as the loan. The net result of the principal transaction in this case was the same as if the insured had borrowed the premium elsewhere, paid the premium to the defendant and then made the loan from the defendant as the reserve was increased, and thereafter paid back to the original lender the borrowed premium. The loan which permitted the insured to pay the premium increased the reserve at the same moment.

The construction now sought by the plaintiffs to be placed upon these statutory provisions is so strained as to thwart the general purpose of their enactment; it would operate against the interest of policyholders of long standing who might need assistance in paying premiums and who have sufficient reserve to enable them to do so without danger either to the insured or to the insurance company.

None of the cases cited by plaintiffs in support of their contention uphold their claim that the premium must actually be paid in advance before the company may make a loan calculated on the reserve for the current policy year, and that the company may not deduct the premium as part of the loan transaction.

In *Pacific Mutual Life Ins. Co.* v. *Turlington* (140 Va. 748; 125 S. E. 658) the policy had no loan or cash value at all " until three annual premiums had been paid and until three full years had passed. This is the contract as written. Entered into by competent parties, not unlawful in itself, not contrary to public policy and in violation of no statute. It is not within the province of courts to whittle away by nice distinctions the patent meaning of plain English " (p. 756). The situation was entirely different there, for until the premium was paid, no loan at all could be made; here, there was admittedly a substantial loan value at the time the application was made. (See similar holding in *Gaul* v. *Prudential Ins. Co.*, N Y. L. J. Feb. 28, 1940, p. 917.)

In the case of *Harn* v. *Missouri State Life Ins. Co.* (70 Okla. 120; 173 P. 214), the insured had paid the premiums for four years and at the end thereof the loan value was $2,500. The loan value at the end of the fifth year was $3,300. The court pointed out that defendant's request did not even amount to an application for a loan on the policy. He had already borrowed $2,485 thereon, so that at the time it had no loan value. The fifth annual premium was payable the following September. " At the time insured claims

to have made application for an additional loan he owed the company $2,485 and interest. Consequently loans had been made the insured by the company to the full amount of the loan value of the policy. June 10, 1914, the insured sent the company a note for $760, and in the letter accompanying it said, Kindly forward me the loan papers necessary for further extensions, and oblige.' This is what the plaintiffs in error refer to as their application for an additional loan. There is nothing in the letter which says that the insured wanted to increase his loan, nor pay the premium which would mature in September, and the policy had absolutely no loan value, but was examined at that time, and would not have until the premium maturing September 13, 1914, was paid " (p. 124).

The policy here had substantial loan value, whereas in the *Harn* case the loan value of the policy was completely exhausted. In addition, the court does not indicate what its determination would have been had the proper request for a loan been made and the ensuing premium deducted therefrom as part of a simultaneous transaction, as was the case here.

·*Pink* v. *Title Guarantee & Trust Co.* (164 Misc. 128); *Robotham* v. *Prudential Insurance Co.* (64 N. J. Eq. 673; 53 A. 842); *Van Schaick* v. *Aron* (170 Misc. 520); ·*Van Schaick* v. *Carr* (Id. 539); *Smith* v. *Alabama Life Ins. & Trust Co.* (4 Ala. 558) and the other cases cited by plaintiffs, involve situations so dissimilar to the case at bar that the various courts' expressions therein, while relevant to the matters before them, can have no bearing upon the situation here presented.

In *Hoover* v. *Union Central Life Ins. Co.* (6 Ohio Dec. 432) the company loaned its insured $250 on the security of the policy at a time when the value of the reserve was but $75.44. The insured continued to pay his premiums regularly for three years beyond that time. He defaulted in the payment of the premium due four years later. The court held the loan was absolutely void as contravening the statute, and allowed judgment to the beneficiary for the face amount of the policy. On appeal the judgment was modified " by deducting the sum borrowed with interest." (61 Ohio St. 656; 57 N. E. 1135.) This case appears never to have been elsewhere cited or followed. Two observations may be made with respect to it: (1) It is clear, and it was conceded by the defendant in the *Hoover* case (*supra*), that the loan exceeded the amount of the reserve even after three more premium payments; whereas in the present case with the deduction of the 1935 premium as part of the very transaction of the loan, there remained sufficient reserve to cover the loan, and (2) the modification of the *Hoover* judgment

by the appellate court by permitting the deduction of the $250, the amount of the loan, from the plaintiff's award, indicates that the loan itself was not illegal and void, but that it should merely be disregarded in determining whether the policy has lapsed.

In a situation similar to the one here presented (*Roeser* v. *Guardian Life Ins. Co. of America*, 162 Misc. 798, 800, 801; affd., N. Y. L. J. May 7, 1937, p. 2294), differing in the respect that part of the four quarterly premiums for the current year had been paid, the court interpreted subdivision 7 of section 101 as follows: " The statute compels the company to loan to the assured a sum based not upon the reserve at the time of making the loan, but upon the reserve at the end of the current policy year and on any dividend additions thereto. This reserve value comprehends the premium for the balance of the current policy year, even though unpaid. The right to deduct premiums to become due during such period, that is during the remainder of the current policy year, is simply correlative to the obligation to make an advance based upon the anticipated worth of the policy."

Motion by plaintiffs for summary judgment is denied, and cross-motion by defendant for summary judgment is granted. Settle order.