CLARA F. BUTLER, Appellant, *v.* NEW YORK LIFE INSURANCE COMPANY, Respondent.

First Department, December 23, 1942.

*Leo A. Greenbaum* for appellant.

*Kenneth deF. Carpenter* of counsel (*Ferdinand H. Pease*, attorney), for respondent.

TOWNLEY, J.  This action was brought to recover the amount of two policies issued by the defendant insuring the life of one John A. Butler.  The policies were issued on August 29 and 31, 1934, respectively.  The premiums thereon were paid up to the anniversary dates in 1939.  On said dates the status of each of the policies was as follows: The cash surrender values had been reduced by loans to $24.25 and there was a dividend credit on each amounting to $36.45.  It is conceded that the cash surrender values of the policies at that time excluding the dividends were insufficient to keep the policies alive under the temporary insurance clause in the policies up to the day of Butler's death on July 6, 1940.  On the other hand it is likewise conceded that if the dividends be added to the amount of the cash surrender values and treated as parts thereof, the sum totals were sufficient to carry the policies as temporary insurance beyond the date of Butler's death.

The insured was unable to pay the premiums which became due in August, 1939 and within the grace period requested an extension of time to make such payments. The company granted such extension upon the terms expressed in what is commonly called a "blue note." The terms of this arrangement called for a cash payment of the interest due on the outstanding notes and the further sum of $26.25. The "blue notes" were for the balance of the premiums due upon each policy. The original cash payments were made by applying the dividend credits and as the notes were renewed from time to time additional small payments of cash were made until, at the time of the default on the last of these notes on March 29 and 31, 1940, about seventy-five dollars in cash had been paid on each note.

The question determinative of this appeal is whether the dividends of $36.45 and the additional cash paid the insurance company as consideration for the "blue notes" must, regardless of the intent of the insured, be considered a part of the reserves or cash surrender values of the policies. In that event the provisions of section 88 (now § 208) of the Insurance Law would require that those sums be applied to the purchase of temporary insurance.

Each policy provides in relation to participation in surplus that the insured has certain options as to what shall be done with his share of the divisible surplus accruing annually on each policy. These options are that the dividend shall (a) be paid to the insured in cash, or (b) applied toward payment of premiums, or (c) applied to purchasing a participating paid-up addition to the sum insured, or (d) left to accumulate at such rate of interest as the company may declare on funds so held.

The option originally elected by the insured was the one providing that dividends were to be left with the company to accumulate at interest, although in practice the insured collected the dividends in cash as they accrued. On September 27, 1939, however, the insured revoked all previous selections of dividend options saying, "I wish to withdraw dividends each year on the above numbered policy."

At this time since the insured was unable to pay the current premiums, he was forced to make a choice whether he would allow the policies to lapse and have temporary insurance for the period purchasable by the reserves remaining in the policies or whether he would make some arrangement by which his policies would be continued in force and his time to pay the premiums extended.

There is a vital difference between keeping a policy in full force and effect and accepting temporary insurance. An insured may not be willing to speculate that his death will occur during the period of temporary insurance. He may as here prefer to make a contract whereby the policies are kept alive for the term of the " blue notes." This arrangement would be of great advantage to a person in failing health who was no longer an insurable risk. When such is the insured's wish, we do not believe that the statute puts obstacles in the way of assisting an insured who is temporarily embarrassed for money. None of the sections of the Insurance Law is designed to work a hardship on the insured. The "blue note" contracts as such have been upheld by this court in *Marek* v. *Mutual Life Ins. Co. of N. Y.* (244 App. Div. 346) and *Talsky* v. *N. Y. Life Ins. Co.* (244 App. Div. 661; affd., 270 N. Y. 665).

Under the terms of each "blue note" agreement, the insured paid a certain amount of money and agreed to pay the balance of the premium at maturity or to forfeit the amount of the cash paid for the protection offered by the " blue note." By the express terms of the "blue note" the cash paid was not paid on account of the premium and never became a part of the reserve under the policy. The "blue note" contract was something entirely outside of the insurance contract although related to it in the sense that it extended the time to pay the balance of the premium. The insured applied to the payment called for by the terms of the "blue notes" the dividends which were due under the policies and which he had elected to receive as cash. The transaction was the same as though the insured had drawn the cash and repaid it to the company as the consideration for the " blue notes." He gave the company a receipt for the dividends and the company in turn gave him credit for the amount on the " blue notes." He gave the company a receipt for the dividends paid to the insured. There is nothing unconscionable in the provisions which allowed the insurance company to retain the cash payments in case of default. That constituted the company's compensation for continuing the policies during the period covered by the notes.

Unless the insured is under some statutory disability to make a "blue note" contract in the form in which these contracts were made for the purpose of keeping his policies in full force and effect, it seems clear that neither the amount of the dividends nor other cash payments became a part of the surrender value of the policies and did not by act of the parties become a part payment of the premiums.

The decision of the Court of Appeals in *Taylor* v. *N. Y. Life Ins. Co.* (209 N. Y. 29) is not in conflict with the views expressed herein. In that case there was no express agreement that the cash payments should not be treated as premium payments on account and there was no clear provision that the cash payments should be forfeited in case of a default on the note. Furthermore, the note in that case was a premium note, whereas, herein it is a collateral agreement.

The waiver forbidden by section 88 of the Insurance Law applies only to the technical " reserve." Since neither the dividends nor the other cash payments were a part of that fund, the question of waiver does not arise as a controlling element in the case. There seems to be no other section of the Insurance Law which requires that as a part of every " blue note " agreement any money paid for the protection afforded thereby must also be deemed a partial payment of premiums.

If, however, on the record here there be any uncertainty as to the true intention of the parties, such uncertainty would present a question of fact which would require a denial of the motion for summary judgment.

The order should be affirmed with twenty dollars costs and disbursements.

CALLAHAN, J. (dissenting). We hold that insured should have received credit for the cash payments made in connection with the "blue notes" in determining the amount of extended insurance available under the policies, otherwise they would conflict with the provisions of former section 88 (now § 208) of the Insurance Law. That section, in substance, states that if any insurance policy is lapsed for non-payment of any premium, or of any note given therefor, the reserves on said policy are to be applied to continue the insurance in force so long as said reserves will purchase temporary insurance at net single premium rates. The statute further provides that any attempted waiver of its provisions shall be void and requires that any value allowed in lieu of extended term insurance shall at least equal the net value of the temporary insurance provided for in the section.

Former section 84 (now § 205) of the Insurance Law provides that the reserve on a life policy must be measured by the net value of the premiums received thereon. Premiums are the moneys paid for insurance coverage. We find that items paid in cash in connection with the issuance of the " blue notes " totalling seventy-five dollars on each policy were in fact paid solely for insurance coverage, and were, therefore, payments

on account of premiums. The statements in the " blue notes " that " although no part of the premium  *  *  *  has been paid," coupled with the provision that the company should retain the cash paid " as part compensation for the rights and privileges hereby granted," would be an attempted waiver of the right to extended term insurance unless the seventy-five dollars payments were treated as premiums, at least to the extent of crediting them as such in computing the purchasing power of extended term insurance under each policy.

That the sums making up the seventy-five dollars were in fact received on account of premium is indicated by all the evidence in the case, other than the bare denial of that fact found in the " blue notes." The " blue notes " provided that credit was to be given for such cash payments against the annual premiums when and if the notes were paid. The " blue notes " in each instance were for the exact difference between the annual premiums and the cash payments already made. The cash payments received were in each instance entered on the books of the company in its home office premium reports as " premium " received. When the policies were reinstated, credit was given for the cash payments against the annual premium due. To permit the parties to " agree," under such circumstances, that the cash payments were not on account of premiums, and that the company might retain same for the " rights and privileges " granted, was clearly an attempt to evade the provisions of section 88, unless credit be given for said cash payments in computing the net value of policy reserves. Examination of the note agreements discloses that no " rights " or " privileges " were granted to the insured thereunder, except that the insurance provided in the policy was continued in force until midnight of the due date of the note. This was merely continued coverage under the policy for the period of the note, and the sums charged for this coverage were premiums. To treat them otherwise would be to deprive the insured of his statutory right to extended temporary insurance.

To give proper credit for this cash payment would not be placing any obstacles in the way of assisting an insured who was temporarily embarrassed for money, nor would it work a hardship on the insured. Quite to the contrary, it would afford him the benefits which the law says he should receive for all premium payments. We do not quarrel with the view that a valid consideration existed for the " blue notes " nor do we question their validity. We merely assert that after a policy is lapsed, the insured must receive credit for all premiums paid,

and that all payments for insurance coverage are "premiums." Any agreement to the contrary would be an attempted waiver of the rights of the insured under section 88, which waiver was forbidden by the statute.

We think *Taylor* v. *N. Y. Life Ins. Co.* (209 N. Y. 29) supports our view. At the time that decision was rendered, the Insurance Law did not forbid any waiver of the right of extended term insurance, but merely required that such a waiver be expressly stated. In the *Taylor* case, a part payment was made on account of an annual premium and a note given for the balance. The note provided that "all claims to further insurance and all benefits whatever, which full payment in cash of said premium would have secured, shall become immediately void and be forfeited to the New York Life Insurance Company if this note is not paid at maturity." The decision held that, despite this attempted forfeiture of all benefits from the payments made, and despite the non-payment of the note, the insured was to receive credit for the cash paid in connection therewith in computing the value of policy reserves, and was entitled to such temporary insurance as this added net value would buy. The court held that public policy required that there be an express waiver of the right to such credit for extended term insurance, and that there had been no such explicit waiver in the above quoted provision as to forfeiture. The statute presently under consideration prevents any waiver whatever of an insured's right to extended term insurance. What might have been expressly waived at the time of the decision in the *Taylor* case could not have been waived in any manner or form at the time that the present "blue notes" were made. Therefore, any agreement which, in effect, constituted such a waiver would be void as against the public policy expressed in the present statute. Any other construction would permit a company to receive money in fact paid on account of premiums, and to evade giving the insured the benefits that the law said he was to receive in the way of extended insurance, by the simple device of saying that the money was not a premium.

*Talsky* v. *New York Life Ins. Co.* (244 App. Div. 661; affd., 270 N. Y. 665) is not controlling in the present case. That decision merely held that the original annual premium date continued to be the date of default after non-payment of a "blue note." And *Marek* v. *Mutual Life Ins. Co. of N. Y.* (244 App. Div. 346) merely upheld the validity of a "blue note." It did not involve any question of the right to credit in computing policy reserves for cash payments made in connection with such notes.

Two cases from other jurisdictions have been called to our attention: *Inter-Southern Life Insurance Co.* v. *Omer* (238 Ky. 790) held that credit must be given in computing policy reserves for partial payments such as those involved here; *Davis* v. *Mutual Life Ins. Co.* (234 Mo. App. 748) expressed a contrary view, but there the " blue notes " contained the express provision that " said extension fees shall in no event be considered as payment in full or in part of said premiums." There was no statutory prohibition in that case against the insured's waiving his rights to extended term insurance.

Both sides say in their briefs that only questions of law exist in the present case. Though we have not all the provisions of the policies before us, we assume that we have all the relevant provisions. It is conceded that only $21.50 was required in the way of additional net reserve value in order to carry the extended term insurance under each policy beyond the date of insured's death. It seems apparent by comparison with net reserve value already allowed that the seventy-five dollars cash paid on each policy in connection with the " blue notes " would have created more than an additional $21.50 of surrender value under each policy if properly credited. Under these circumstances we find that plaintiff was entitled to summary judgment for the amount demanded in the complaint.

MARTIN, P. J., and UNTERMYER, J., concur with TOWNLEY, J.; CALLAHAN, J., dissents in opinion, in which COHN, J., concurs.

Order affirmed with twenty dollars costs and disbursements.