JOSEPH K. GUERIN, as Executor of SAUL S. MYERS, Deceased, Plaintiff, *v.* NEW YORK LIFE INSURANCE COMPANY, Defendant.

Supreme Court, Special Term, New York County, April 6, 1945.

*Emil H. Wasserberger* for plaintiff.

*Kenneth DeF. Carpenter, Perlie P. Fallon* and *Ferdinand H. Pease* for defendant.

Levy, J. Defendant issued to plaintiff's testate two policies of insurance, dated respectively June 18, 1919, and December 24, 1925. Insured died June 25, 1938. The present application is for summary judgment upon the causes to recover the proceeds of extended term insurance arising out of those contracts. The proof is fully documented. No factual issue is presented.

The allegations are that at the time of the claimed lapse of each policy, the insured having made no election, the company automatically continued or became obligated to automatically continue the insurances in their face amounts for periods considerably beyond the date of death. They are controverted upon the basis of an alleged indebtedness existing at the time of the claimed lapse, rendering the policies valueless. The issue upon this motion is tendered by the reply to such defense, to the effect that the indebtedness relied on by defendant was created by the making of loans which were illegal and void because (1) they were in amounts in excess of the available reserve held for that purpose by the company at the time of such loans and, therefore, in violation of subdivision 8 of section 16 and subdivision 7 of section 101 of the Insurance Law (1909) and (2) the loans were usurious.

With respect to the latter charge, plaintiff claims generally that defendant employed a method of casting interest whereby a usurious rate was exacted by taking, in addition to the maximum legal rate of 6% interest on a current loan, a further sum as interest upon an outstanding indebtedness, which latter interest had not yet fallen due. In other words, defendant reserved and took upon a current loan, in addition to the maximum legal interest, a further sum to which it was not entitled; it required insured, in addition to paying the legal interest, to do something which he was not otherwise obliged to do.

There were ten loans made on the first policy. The policy contract with respect to loans made on the security thereof provided: " Interest on the loan shall be at the rate of six per cent per annum payable annually on the anniversary of the Policy." And the loan agreement provided: " 1. To pay said Company on the next anniversary of said policy, interest on said loan at the rate of six per cent per annum from this date to said anniversary, and annually thereafter on each anniversary of said policy. If interest is not paid on the date *when due*, it shall be added to the principal and bear interest at the same rate."

It is thus clear that interest upon loans is payable on the anniversary date of the policy which was the 18th day of June

and not otherwise. Indeed, defendant's bill of particulars confirms that fact in this language: " 3(c) The due date of interest installments on each loan was the anniversary of the policy June 18th." In other words there was but one installment of interest each year on any loan and that was due on the anniversary date.

Claim is made, for example, that in connection with the transaction computed as of January 18, 1933, which brought the indebtedness to $10,626.81, there was then taken from the insured the sum of $349.64. This sum, the defendant states, was interest accrued from June 18, 1932, deducted from the new loan proceeds and added to the principal debt. But, urges plaintiff, there was no interest in any sum whatever due on January 18, 1933, and none was due until June 18, 1933. In *Household Finance Corp.* v. *Goldring* (263 App. Div. 524, 526, affd. 289 N. Y. 574) the court said: " When the lender deducts the accrued interest from the proceeds of a new loan, the transaction differs in no respect from a payment of the interest in cash." Thus, continues plaintiff, defendant accordingly immediately received from insured a payment of cash in addition to the obligation to pay interest at 6% upon the new loan from January 18, 1933, which additional cash payment the insurer was *not then entitled to* and the insured was *not obliged to pay*. Later, on July 14, 1933, defendant received in cash, interest in the sum of $263.75 and on January 18, 1934, the further sum of $373.82. Interest at 6% on $10,626.81 for one year is $637.61. But from January 18, 1933, to January 18, 1934, defendant received $263.75 plus $373.82 or a total of $637.57 in addition to the cash in the sum of $349.64 at the time the January 18, 1933, loan was made and to which the company was not then entitled.

The first loan was made December 14, 1931. Interest at 6% on the next anniversary date, June 18, 1932, was $296.44. It was not fully paid. Upon the occasion of the second loan the unpaid interest in the amount of $245.19 was added to the principal and the new indebtedness was $9,939.19. The loan statement declared: " The interest *due* at last *due* date not having been paid, has been added to the loan as shown by this statement and in accordance with the Loan Agreement." And it further declared that interest at 6% amounting to $596.35 would be due June 18, 1933, and annually, " not in advance." This transaction, it is conceded, was in all respects proper. No complaint is made that appropriate interest at appropriate

time was added to principal. Of compound interest plaintiff does not complain.

The improper practice, it is charged, commenced with the third transaction of January 18, 1933, already described. That was five months *before* any interest was due on the pre-existing indebtedness. Thus, it is claimed that on January 18, 1933, there was and should have been made available to insured and paid over to him as his own out of the loan of $10,626.81, the sum of $349.64. Since he was being charged with a loan indebtedness of $10,626.81, to bear interest at 6%, he was entitled to receive in cash *after all proper deductions* the sum of $349.64. However, in order to obtain the loan of $10,626.81 insured was required to part with the said sum of $349.64 when in fact no such sum was then payable to the company.

The subsequent transactions arranged in the same fashion are subjected to like criticism. In defendant's answer it alleges indebtedness relying upon the last loan as the transaction creating the debt. That loan was calculated as of February 28, 1938. It was in the sum of $15,753. The preceding transaction had been calculated as of October 18, 1937, and was in the sum of $15,350.12. In accordance with the loan statement thereof interest in the sum of $613.24 was to be due June 18, 1938. Thus it will be seen that the last loan occurred four months *before* any part of the interest item of $613.24 was due. On the contrary, on February 28, 1938, defendant took from insured interest from October 18, 1937, to February 28, 1938, in the sum of $335.62, which it had no right to extract.

In general, it is plaintiff's claim that insofar as the loan transactions are concerned, executed pursuant to statute, policy contract and loan agreement provisions, regardless when a loan is paid, no interest may be taken until the following anniversary date of the policy and annually thereafter; that the taking of interest at any intermediate time is the taking of something to which the company is not entitled; that it is the deprivation of insured of a sum of money representing interest *before* such interest was due. This, plaintiff claims, was tantamount to a cash payment before there was any obligation to make any payment whatever. The result is, therefore, usury, because defendant at the time of each new loan was entitled to exact only an obligation to pay interest at 6% at the next anniversary date upon the amount of the new loan and the immediate exaction of any sum whatever in the absence of any corresponding obligation to pay it was the exaction of something in addition to 6% reserved and taken on the loan.

Upon the basis of this statement of plaintiff's claim as to usury, the defendant must justify its practice. If it considers itself entitled to the full amount of interest which was from time to time reserved and taken, it has the burden of establishing its propriety. The company concedes " that the defendant did so is not disputed and such has been its practice and the practice of other insurers for many years past." Moreover, defendant urges that in his application for loans insured asked that " any existing indebtedness to said company on said policy with accrued interest shall be deducted " and that " The policy contract states clearly that the insured could repay the indebtedness at any time. The policy holder took advantage of this privilege and asked that the old loan be repaid when each new loan was made." Since indebtedness includes both principal and interest, continues defendant, plaintiff is estopped from contending that upon consummating a new loan the company had not the right to deduct both the old loan and the interest accrued thereon. Finally, defendant contends " that each and every loan transaction entered into between Myers and the defendant during his lifetime was made strictly pursuant to the terms of his policies, his applications for the loans and the loan agreements executed by him; that each item of loan interest was properly made and charged; that in no instance did the defendant violate any provisions of law and that plaintiff's allegations of illegality and usury have no foundation in fact."

At the time these loans were made subdivision 8 of section 16 of the Insurance Law (1909) provided: " 8. Any life insurance company may lend to any policyholder upon the security of the value of his policy a sum not exceeding the lawful reserve which it holds thereon, and such loan shall become due and payable and be satisfied as provided in the loan agreement or policy." Thus, the application for a loan may not be made the basis of authority for proper practice (Insurance Law [1909], § 58*). The policy clearly provides that interest " shall be at the rate of six per cent per annum payable annually on the anniversary date of the policy." The loan agreement provides for payment of " interest on said loan at the rate of six per cent per annum from this date to said anniversary and annually thereafter on each anniversary of said policy. If interest is not paid on the date when due, it shall be added to the principal and bear interest

---

\* This section provided that the policy of insurance should contain the entire contract between the parties and nothing should be incorporated therein by reference unless endorsed upon or attached to the policy when issued. —[Rep.

at the same rate.'' Such provision was contained, for example, in the second loan agreement which was calculated as of the anniversary date, June 18, 1932. Accordingly, the debt of $9,939.19 then incurred could have been repaid at any time *but* interest on that debt from June 18, 1932, could not be demanded or taken before the next anniversary date, June 18, 1933, when alone it was due. It must be held in mind that the lawful reserve is at all times adequate as security for the payment of interest to fall due.

The next, or third, loan occurred, however, not one year later but on January 18, 1933, seven months later. The loan application made therefor could not alter the rights already fixed under the statute, the policy and the second loan agreement. What did occur on the third loan has already been related. The fact that the old debt was being canceled did not authorize the taking of any sum at that time in addition to 6% interest upon the whole of the new debt. Upon the precise question of the time when the insurer may add interest plaintiff asserts that there is no adjudication in this jurisdiction. He refers to a case arising in another State and involving this defendant. In *New York Life Insurance Co.* v. *Shivley* (188 Ark. 1044, 1046) the court said: '' The Company made several loans on this policy, and, when it would make a new loan, it would always deduct the amount of the former loan and interest from the amount advanced as a loan on the policy. In all instances, also, where a loan was made, there was a policy loan agreement. * * * The only question in this case therefore is whether * * * the appellant will be permitted to calculate the interest that is *not due,* and will not be due for several months, and add this to the principal * * *. We do not think this should be permitted, nor do we think it was the intention of the parties. The interest not yet due should not be available to increase the amount of the indebtedness * * *.'' (Italics supplied.)

In *Heller* v. *Yaeger* (258 App. Div. 139, 141) the court said: '' Where a borrower, in addition to the promise to pay six per cent interest, surrenders also a contingent right to profits, the transaction is usurious. * * * In *Cleveland* v. *Loder* (7 Paige, 557) the borrower agreed to pay legal interest and permitted the lender to retain certain securities at stated prices. The court said that the possibility of making more than legal interest for the loan was enough to make the transaction usurious. ' Whenever the lender stipulates even for the chance of an advantage beyond the legal interest, the contract is usurious,

if he is entitled by the contract to have the money lent with the interest thereon repaid to him at all events.' " Thus, with respect to the third loan, defendant could not extract the payment of any sum on January 18, 1933, when no interest was due.

It relies on *Baker* v. *Equitable Life Assurance Society* (288 N. Y. 87, 92) quoting as follows: " As to interest on policy loans, defendant properly charged against the policy's surrender value, interest to the date of premium default, even though that date was prior to the date when annual interest became due when insured was not in default as to premiums. Proof of the payment of compound interest on these policy loans, whether or not justified by the terms of the policy, does not entitle the beneficiaries to a credit, since the insured knew that the interest was being compounded, and failed to object thereto." While that case may be authority for the taking of interest before anniversary date where the insured was in default as to premium, it prohibits the taking of interest *before* an anniversary date where insured is *not in default.* However, plaintiff does not complain of compound interest. The taking of proved usury will render a loan void, and practice or acquiescence will not affect the application of the statute. *Mills* v. *Equitable Life Assurance Society* (262 App. Div. 907) too, involved an issue of compound interest only. It was found there as fact that no more than 6% interest was taken and that it was taken when *due.* The court's opinion reads in part: " Moreover, the insured indulged in the procedure without protest and as a party thereto, and, even if the unpaid interest upon its *due* date did not merge with and assume the character of principal, the plaintiff cannot now recover, as the right to retain compound interest when voluntarily paid is unassailable." (Italics supplied.) The same situation was clearly presented in *Household Finance Corp.* v. *Goldring* (263 App. Div. 524, 526, 527, affd. 289 N. Y. 574, *supra*) where the court said: " When the lender deducts the accrued interest from the proceeds of a new loan, the transaction differs in no respect from a payment of the interest in cash. (Compare *Mills* v. *Equitable Life Assurance Soc. of U. S.*, 262 App. Div. 907.) The lender merely pays to himself the amount which is *due* for interest out of the sum which otherwise would be paid to the borrower and immediately repaid by the borrower to the lender. * * * This suggests the limitation, to be constantly remembered, that the rule applies only to interest which has *fallen due* and *excludes* from its operation any *agreement to pay interest upon interest which has not accrued.*" (Italics supplied.)

While defendant has directed the court to authority for the taking of interest not due in the event of premium default, even though before an anniversary date it has offered no such authority where the taking of such interest occurred before the anniversary date and in the absence of premium default. It is well settled that interest, when due, may be added to principal and interest charged thereon. This is permissible whether or not it is characterized as compound interest. Interest not due may not, however, be added to principal at any time before it does fall due.

To further avoid the condemnation of the loan transactions, defendant relies on *Orleans Parish* v. *N. Y. Life Ins. Co.* (216 U. S. 517) and *Wagner* v. *Thieriot* (203 App. Div. 757) which are to the effect that advances made by an insurance company upon a policy are not loans. Those cases, however, must be considered in the light of the issues there presented. In the *Orleans Parish* case (*supra*) the company resisted imposition of tax upon loans. The United States Supreme Court held that the transactions cannot be taxed as loans under the Louisiana statute. It did not, however, hold that as between the company and the insured and as to the rights and claims of the latter the advances are free from the operation of statutes against usury. In the *Wagner* case (*supra*) the beneficiary of the policy brought action against the estate of the deceased insured to recover the amounts loaned to the insured during his lifetime. To hold that the beneficiary had no such cause of action is not to hold that the advance is not a loan. In fact, in *Metropolitan Life Ins. Co.* v. *Orleans Parish* (205 U. S. 395) the Supreme Court did sanction the imposition of tax on loans under the Louisiana statute since the claim of the absence of a debtor-creditor relation was not raised. At any rate, those cases do not present the issue here confronted and are not controlling. (*Grauer* v. *Equitable Life Assurance Society of U. S.*, 167 Misc. 30.)

In *Matter of Hayes* (252 N. Y. 148, 151, 152–153), one year following the death of the insured his wife died and " her estate made claim upon her husband's estate for the amount deducted which represents the advance." The court in the course of its opinion stated: " It is conceded that none of the five loans exceeded the lawful reserve on any policy. The amount of each loan was slightly less than the cash value of the policy on the date of the loan. * * * Since each advancement was less than the cash value of the policy at the time the moneys were

advanced, the company could not suffer a deficit. The value of the policy constituted the fund out of which the company could repay its loans. These securities, always of greater value than the loans, were in its possession and formed complete protection. Under these circumstances enforcement of any remedy against the person of the borrower doubtless never was considered.'' This is not to say that the advance may be made in disregard of the usury statute and that the '' borrower '' may not require compliance therewith. That the kind of advance made upon the security of a policy has every characteristic of a loan is the effect of the holding in *Hall* v. *Eagle Insurance Co.* (151 App. Div. 815, affd. 211 N. Y. 507). Indeed, it was there held that the personal obligation of the borrower was not essential to create a valid loan, and that the advance there made was usurious.

Nor can practice avail the defendant. The provision is that interest is payable annually. The agreement was not for the taking of interest monthly or quarter-annually or semi-annually or otherwise than annually. Whatever convenience the practice may have served, no statute or agreement sanctioned it. Nor will the claimed acquiescence of the insured avail the defendant. The decision was not for the insured to make. It was made for him by the Legislature and it decided that interest in excess of 6% rendered a loan void, not voidable. Whatever may have been his allegedly expressed wish at the time of the loan applications, may not be raised to thwart later insistent reliance upon the statute enacted for his protection. *It is well to observe again what was said in this connection* in *Household Finance Corp.* v. *Goldring,* 263 App. Div. 524, 527, (*supra*): '' * * * the rule applies only to interest which has *fallen due* and *excludes* from its operation any agreement to pay interest upon interest *which has not accrued.*'' (Italics supplied.) And in *N. Y. Firemen Insurance Co.* v. *Ely* (2 Cow. 678, 705) the court said: '' In other words, the plaintiffs received more than seven per cent. because they believed that they had a legal right to receive more. If they judged erroneously, it was a mistake in point of law, and not in point of fact; and unless there be something in the case of usury to distinguish it from all other cases, their ignorance or mistake in relation to the law, can afford them no protection. * * * But it is not necessary to the offense, that there should be *an actual intention to violate the statute.* It may be committed by one who, in point of fact, never heard of the statute. * * * That the principle of calculation adopted

by the plaintiffs, was the one in general or universal use among banks, cannot alter the law of the case. A statute cannot be abrogated by custom or usage of a particular trade."

The subject was given careful and compelling consideration in another jurisdiction in *Emig's Admr.* v. *Mutual Benefit Life Ins. Co.* (127 Ky. 588, 596–597) where the court declared: " In lending money to its policy holders an insurance company occupies exactly the same attitude as any other money lender. It is entitled to demand and collect the amount of its debt with 6 per cent. interest thereon, and no more. It is true the contract allows it to demand more than this, and the right to require the borrowing member to pay a larger sum than his debt and interest; but this character of contract, no matter how carefully it may be worded, or how skillfully devised, will not be enforced. When the company lends money and takes as security for the loan a policy that amply secures it, there is no reason why it should be allowed privileges or rights not extended to ordinary money lenders. Our laws against usury, and other devices and schemes resorted to by lenders to enable them to charge debtors more than the legal rate of interest, are rigidly enforced, and no plan, however ingenious, will be allowed to defeat them."

What has been said with respect to the ten loans on the first policy applies with equal force to the six loans on the second policy. An additional observation is appropriate. Defendant insists that the criticized method of casting interest was unavoid able. But another vice appears which, likewise, neither convenience nor universal practice can excuse. The second loan on the second policy was actually concluded on January 24, 1934, or January 25, 1934. The policy anniversary is December 24th. The prior debt was $5,025. Interest thereon was due December 24, 1933. The new loan was $6,767.25. Insured had the use of the higher principal sum from January 24, 1934. Thus, defend- ant should have charged interest on $5,025 until January 24, 1934, and on $6,767.25 from January 24, 1934. That was not the case, however. Insured was required to pay interest on the higher sum from December 24, 1933, or for thirty-one days *before* he had had the use of that principal sum. Actually, the sum of $406.04 to become due as interest on December 24, 1934, as set forth on the loan statement represents 6% of $6,767.25. Yet, on December 24, 1934, insured had had the use of that principal sum for only eleven months and not for a full year. This was the practice with respect to most of the loans on both policies. Plaintiff referred particularly to this specific loan and the defendant has offered no defense of it.

This practice and the practice of taking cash payments of interest by deduction from loan proceeds *when no interest was due*, may seem to be trifling. As was said in *Blumenthal* v. *Equitable Life Assurance Society* (173 Misc. 964, 966) " * * * the insurance company and its insured do not deal with each other on an equal footing * * *." However trifling the wrongful exactions may be in the particular case, the controlling principles and statutes apply with equal force to all cases. Indeed, the magnitude of the possibility of additional profit becomes readily apparent in the light of the multitude of loan transactions made by insurers upon millions of existing policies. " Whether that excess be great or small is unimportant; for the least excess is as much usury as the most enormous." (*N. Y. Firemen Insurance Co.* v. *Ely*, 2 Cow. 678, 704, *supra*.)

We come next to a consideration of the charge that the loans when made were in amount in excess of the available reserve on the policy and therefore void as in violation of statute. The claim is generally that reserve value available for loan must be determined by first deducting therefrom any and all existing indebtedness *before* a new loan is made. The value of the policy can be increased either by premium payment, dividend additions or loan repayment. A policy, however, whose loan value is already exhausted cannot acquire any value by the creation of a new loan and then deducting the old debt from the new loan in order to create a reserve value to support the new loan.

Both policy and statute grant insured the privilege of borrowing upon the sole security of his policy to the limit of its available reserve. Thus the claim is that once a loan is made, that debt, until repaid, must first be deducted from reserve before the company makes another loan upon the reduced available reserve. Any subsequent loan *which exceeds the reduced reserve* is in contravention of subdivision 8 of section 16 and subdivision 7 of section 101 of the Insurance Law (1909). For example, argues plaintiff, the company may not use a maximum attained reserve of $1,000 upon a policy on which there is an unpaid debt of $750 for a twofold purpose: first, as security for the existing debt of $750 and second, as security for another loan of $800. Plainly, the first debt for which the reserve is held as security reduces the available reserve for further loan so that any subsequent loan could not possibly exceed $250 as a maximum. Upon the basis of this statement, the defendant's practice as exemplified here was a clear violation of statute.

Defendant's reliance is placed chiefly, if not wholly, on *Blumenthal* v. *Equitable Life Assurance Society* (173 Misc. 964, *supra*). In its *brief* defendant states that practically all of the loans on each policy succeeding the first were for the purpose of paying premiums. If that were the fact it may have a defense upon this branch of the application within the spirit of the opinion in the *Blumenthal* case (*supra*). The record, however, does not support that assertion. The sixteen loan statements clearly show that in probably not more than four instances was any part of the loan proceeds applied to the payment of current premiums. The facts and issues here presented do not fit within the restricted application of the opinion in the *Blumenthal* case (*supra*) and are not parallel to the facts of that case. From the following excerpts of that opinion its limited application becomes plain. It was found there that the loan was "primarily for the purpose of paying the then due premium" (p. 965). And further, "None of the cases cited by plaintiffs in support of their contention uphold their claim that the premium must actually be paid in advance before the company may make a loan calculated on the reserve for the current policy year, and that the company may not deduct the premium as part of the loan transaction" (p. 967). And again, "'The right to deduct premiums to become due during such period, that is, during the remainder of the current policy year, is simply correlative to the obligation to make an advance based upon the anticipated worth of the policy'" (p. 969).

There may well be some basis for argument that the payment of premium *out of loan proceeds* which at once establishes an increased policy value justifying the loan is a transaction no different from a payment of premium in cash followed by a loan upon the policy thus enhanced in value. But that is not the issue here. The available reserve value of both policies after the first loan on each, was in every subsequent instance but a relatively small fraction of the new loan and it is likewise true the payment of current premiums represented a relatively small fraction of the loan proceeds, the balance of which was applied to other purposes. In fact, the major portion of the proceeds of each subsequent loan was applied to the payment of the pre-existing debt which is the thing of which plaintiff complains. The next largest portion of the loan proceeds was applied to the cash payment of interest at a time *when no interest was due,* which is likewise the thing of which plaintiff complains. The next largest portion of the loan proceeds was used to dis-

charge notes representing past-due premiums which it has been held is not the payment of a premium. (*Butler* v. *New York Life Insurance Co.*, 265 App. Div. 289.) Finally, the smallest fraction of the loan proceeds, and this in but only four instances, was used in the payment of current premiums.

At no time has the *deduction of debt from loan proceeds* been authorized as the basis for the determination of loan value, or of reserve available as security for a loan. Statute directs deduction of debt be made only from " loan value ". The applicable sections of the Insurance Law (1909) in force at the times here involved were as follows:

Subdivision 8 of section 16: " Any life insurance company may lend to any policyholder upon the security of the value of his policy a sum not exceeding the lawful reserve which it holds thereon, and such loan shall become due and payable and be satisfied as provided in the loan agreement or policy."

Subdivision 7 of section 101: " * * * after three full years' premiums have been paid, the company at any time, while the policy is in force, will advance, on proper assignment or pledge of the policy and on the sole security thereof * * * a sum equal to, or at the option of the owner of the policy less than, the reserve at the end of the current policy year * * * less a sum not more than two and one-half per centum of the amount insured by the policy * * * and that the company will deduct from such loan value any existing indebtedness on the policy and any unpaid balance of the premium for the current policy year, and may collect interest in advance * * * to the end of the current policy year * * *."

What was done here is not in conformity with those statutes. The plaintiff in his affidavit has convincingly established that the company method, as opposed to the statutory method, results in a greater profit to the company in that actually the insured has had the use of the same amount of money by either method, yet by the company method it is enabled to create a larger principal debt. Thus for the actual use of a like sum of money both the principal debt is higher and the interest accruing is larger by the company method than by the statutory method.

That the loan reduces the value of the policy was held in *Perry* v. *Prudential Insurance Co.* (144 App. Div. 780) where the court stated: " The policy also provided that * * * any indebtedness placed on the policy will operate to reduce the benefits. The benefits referred to were, *first,* as to the amount of the loan, and then as to the extended period of insurance. The parties, therefore, agreed that in case of a loan on the

policy these benefits would be reduced. * * * This was clearly within the contemplation of the parties and made a part of the contract, and, of course, there is a justice in this arrangement, for the reason that when the company makes its loan upon the policy the value of the policy has been thereby reduced, and it could ill-afford to carry the policy for as long an extended period as if it had advanced no money thereupon.''

The prohibition against the deduction of debt from loan proceeds was reiterated in even more emphatic language by the New York State Legislature in amendments since 1938. Subdivision 7 of section 101 became paragraph (g) of subdivision 1 of section 155 (L. 1939, ch. 882) and read as follows: '' * * * after three full years' premiums have been paid, the insurer issuing the same will, at any time while the policy is in force, advance, on proper assignment or pledge of the policy and on the sole security thereof * * * a sum equal to, or at the option of the person entitled thereto less than, the reserve at the end of the current policy year on the policy and on any dividend additions thereto, less a surrender charge of not more than two and one-half per centum of the amount insured by the policy and of any dividend additions thereto; and that the company may deduct from such loan value any existing indebtedness, including interest due or accrued, on the policy and any unpaid balance of the premium for the current policy year * * * .''

In 1941 (L. 1941, ch. 881) it was again amended to read as follows: '' * * * after three full years' premiums have been paid, the insurer issuing the same will, at any time while the policy is in force, advance, on proper assignment or pledge of the policy and on the sole security thereof * * * a sum equal to, or at the option of the person entitled thereto less than, the cash surrender value at the end of the current policy year of the policy computed in accordance with the provisions of subsection one of section two hundred eight; and that the company may deduct from such loan value (in addition to the indebtedness deducted in determining such value) any unpaid balance of the premium for the current policy year * * * .''

In the circumstances the defendant has justified neither its practice of casting interest nor of determining loan value.

The second separate and complete defense to the cause stated upon the second policy, the two-year Statute of Limitations, has apparently been abandoned. The defense seems to be based upon section 151 of the Insurance Law (L. 1939, ch. 882). It is inapplicable. In any case, the defense is without merit.

The motion must be granted. Settle order.